UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HARTFORD CT

| | |
|---|---|
| DAISY CHAVEZ<br>Plaintiff | Case No. |
| VS. | 303CV1112 |
| THE METROPOLITAN DISTRICT<br>COMMISSION<br>Defendant | WWE<br>JUNE 9, 2003 |

## COMPLAINT

### JURISDICTION

1. This is a civil action seeking redress against defendant, The Metropolitan District Commission who committed acts under color of state law, depriving plaintiff, Daisy Chavez, of her rights under the Constitution of the United States, particularly under the provisions of the First and Fourteenth Amendments, and under the laws of the United States, particularly under The Civil Rights Act of 1866 and 1877, 42 U.S.C. Sections 1981 and 1983, and 2000e, et seq..

2. The jurisdiction of this Court is invoked pursuant to Title 28, U.S.C. Section 1343, which allows a plaintiff to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, and pursuant to Title 28, U.S.C. Section 1331.

3. Venue in this district is appropriate under 28 U.S.C. Section 1391, this being the judicial district in which the cause of action arose.

## PARTIES

4. Plaintiff, Daisy Chavez, is a citizen of the United States and a resident of Bloomfield, Connecticut.

5. Defendant, The Metropolitan District Commission, is a public instrumentality created pursuant to Special Acts of the State of Connecticut by Section 511 of the 1929 Special Acts (hereinafter referred to as "MDC"), has its offices located at 555 Main Street, Hartford, Connecticut. At all times hereto, defendant MDC was acting under color of state law.

## PRIOR PROCEEDINGS

6. Plaintiff filed a formal charge of complaint with the Connecticut Commission on Human Rights and Opportunities ("C.C.H.R.O.") on or about August 9, 2001, alleging discrimination by defendant MDC based upon its application of national origin, sex and retaliation as a factor in evaluations, compensation positions criteria, and decisions, and further, that Defendant, acting through its managers, retaliated against Plaintiff for complaining about national origin and sex discrimination.

2

6a. The Plaintiff filed a second formal charge of complaint with the C.C.H.R.O. on or about October 22, 2002 alleging discrimination by Defendant, MDC, based upon its application of national origin, sex and retaliation in its failure to promote Plaintiff to certain management positions, and alleging continuing acts of retaliatory discrimination.

7. A formal charge of complaint was simultaneously filed with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC"), alleging discrimination by defendant MDC on the basis of national origin, sex and retaliation with each of the above complaints.

8. A complaint was filed with the United States District Court for the District of Connecticut, Case No. 302CV458(SRU), on March 13, 2002 alleging discrimination by defendant MDC based upon its application of national origin, sex and retaliation as a factor in evaluations, compensation positions criteria, and decisions, and further, that Defendant, acting through its managers, retaliated against Plaintiff for complaining about national original, sex and retaliatory discrimination.

## STATEMENT OF THE CASE

### COUNT ONE

9. Plaintiff is Daisy Chavez and she resides at 547 Simsbury Road, Bloomfield, Connecticut 06002.

10. The Respondent is The Metropolitan District, (otherwise known as The District, or MDC, or The Metropolitan District Commission), located at 555 Main Street, Hartford, Connecticut.

11. The Respondent employs more than 15 persons, and is a special chartered municipal entity in the State of Connecticut.

12. Plaintiff is a female Hispanic native of Cuba who started working at the MDC on July 12, 1976 as a Junior Technician.

13. Since that time, Plaintiff has been promoted to an Engineering Technician; a Drafter; a supervisor and an Administrator Grade 10, upgraded to an 11, reclassified to a 13 and upgraded in 1994 to a 14 (the highest grade for an Administrator).

14. In the summer of 1994, District Manager Anthony Milano had several conversations with Plaintiff regarding her opportunities to advance and the importance to her career at the MDC of having a Master's degree and he strongly encouraged Plaintiff to obtain one. These conversations told Plaintiff that Mr. Milano was going to promote her to upper management if she was to obtain a graduate degree.

15. In the summer of 1996, Plaintiff graduated from the University of Hartford with a Master's Degree in Public Administration. This took a great deal of personal and financial sacrifice to obtain while working full time.

4

16. In the spring of 1997, Mr. Milano initiated a conversation with Plaintiff where he offered to transfer Plaintiff to Operations to be trained by the Director of Operations for an Assistant Director of Operations position, which was going to take 3 to 6 months to create. Mr. Milano asked Plaintiff to think it over over the weekend and let him know on the following Monday morning.

17. On that Monday morning, Plaintiff briefly met with Mr. Milano and thanked him for the opportunity and agreed to the transfer as proposed by him. Mr. Milano then asked Plaintiff to work out a transfer date with Peg Roughan, Director of Personnel.

18. Plaintiff never received the position offered by Mr. Milano or any other substantive promotion.

19. On September 23, 1998, Mr. Milano called Plaintiff to his office where Peg Roughan was also present and directed that Plaintiff be assigned to a non-existent special assignment in Engineering and Planning (E&P). Plaintiff reported on Monday morning, September 28, 1998, to the Manager of Engineering Services where Plaintiff remained until Plaintiff was involuntarily ordered into a lateral, vacant, permanent position.

20. To remove herself from this, Plaintiff started to apply for Management positions that were posted. For each and every position, Plaintiff was either informed that she was not qualified or just was not sent notifications at all, even though Plaintiff would call Personnel and request notifications.

21. On April 2, 2001, the Manager of Utility Service position was posted and Plaintiff was encouraged by Robert Moore to apply for it. However, Plaintiff later found out that Mr. Moore had no intention of giving this position to Plaintiff. The interviews were completed on Tuesday, June 26, 2001, and by Thursday, an email was sent out announcing the successful candidate. Normally, this process takes several weeks. At the interview Plaintiff was informed the position would not be awarded until sometime in the middle of July. A non-Hispanic white male was awarded the position. The Plaintiff was the more qualified applicant as was denied the position due to her national origin, sex and in retaliation for her taking protected activities in filing previous complaints of discrimination.

22. Although Plaintiff followed postings and diligently looked for promotional opportunities, job postings for management positions were inconsistent. When MDC Management wants to award a position to an employee, they pick which jobs to post, and often place a favored candidate in the position as an Interim Manager to qualify the individual and/or to build their qualifications for the position. Other management positions are never posted, such as the position of Manager of Special Engineering Projects, where a white, non-Hispanic male received this job, which was recently awarded without the job being posted. When a management job is awarded without posting, qualified candidates like Plaintiff are denied the opportunity to compete for the position, and is another means

to carry out a glass ceiling against minority promotion and violates the Affirmative Action legal obligations of the Defendant.

**COUNT TWO**

23. Paragraphs 1 through 22 of Count One are incorporated as Paragraphs 1 through 22 of Count Two as fully set forth.

24. The Affirmative Action Plan as well as the Levy & Droney "Compliance Audit of Employment Practices of the Metropolitan District Commission" dated March 15, 2002 specifically identifies the Operations Management area as that in greatest need of a female and minority hiring at the MDC.

25. A violation of the MDC'S Affirmative Action mandates exists in that the Affirmative Action Plan has not been maintained or updated since 1996, and was rewritten in a manner which is inconsistent with Federal Affirmative Action Plan requirements set out in Executive Order 11246, as amended, despite the fact that the Defendant MDC is a Federal contractor and receives in excess of $50,000 in Federal funds annually.

26. The above acts continue a pattern of discrimination and retaliation against Plaintiff, and other similarly situated employees.

27. The actions of the Respondent represent a pattern and practice of discrimination and retaliation against Plaintiff as a Hispanic female and is part of an overall pattern and practice of MDC Management to discriminate against minority employees and

7

to create a glass ceiling to prevent management level minority employees' advancement and to retaliate against them by preventing them from achieving their full potential and career goals. Plaintiff is the only Hispanic Administrator who has, through 25 years of hard work and dedication at the MDC, worked her way up the ranks to this level. However, Plaintiff has not received a promotion since 1984 and has not had an upgrade since 1994. After obtaining the requested MPA, all doors to upper management positions have been closed. Opportunities for training and eventual promotions to management positions are only provided to the chosen, none minority candidates.

28. Further, by so discriminating against Plaintiff, and, given the pattern of Defendant's conduct as exhibited by its repeated treatment of Plaintiff, Defendants did not adhere to the Federal Affirmative Action requirements set forth as guidelines to govern its employment decisions and practices as a Federal contractor receiving in excess of $50,000 annually in Federal grants.

29. As a result of Defendant's systematic conduct and actions, carried out under color of state law, Plaintiff has been deprived of and denied her rights, privileges, and immunities guaranteed by the laws of the United States, specifically Title 42, U.S.C. Section 1983, and by the Constitution of the United States, to wit: the failure to conduct its employment practices in a manner consistent with the Affirmative Action mandates of Federal and State law.

30. The inconsistent and discriminating manner in which employees are promoted has long been a problem at MDC, where the "Good Old Boys" network operates at its best to promote white males in lieu of minorities and females. Plaintiff has become angry and frustrated by the manipulations. No matter how hard you work and whatever your personal and professional credentials and accomplishments and qualifications, if you are a minority or female, Messrs. Milano, Moore, Geldoff and others, continually strip you of your dignity and self-respect; take advantage of your knowledge and abilities while counting on your ignorance of the law and human rights; and play on your fear of retaliation and possible job loss to hold minorities and females down.

31. During the recent few years, as Plaintiff has attempted to gain a promotion, she have seen a pattern of the MDC not qualifying Plaintiff and other minority employees for positions while qualifying white candidates who clearly failed to have minimum qualifications in education and experience.

32. The MDC has a long-standing record of being under-represented with female and minority employees in upper management and has failed to resolve this under-representation despite this being a stated goal on the MDC Affirmative Action Plan. The actions of the MDC are a violation of the Affirmative Action obligations of the MDC as a municipal entity.

9

33. Plaintiff has tried to address her personal and professional concerns at the MDC directly in a professional way, but to no avail. Plaintiff has currently been ordered into the existing vacant position of Administrator of Special Services, however, substantive Cross Connection duties and staff were improperly removed from her responsibilities by Mr. Milano, Mr. Moore and Mr. Geldoff through the Director of Personnel, Peg Roughan, leaving just the clerical, non-managerial responsibilities. As a result, these actions changed an established position's duties and responsibilities as stated in the Board-approved job description, without the required prior Board approval. These tactics are constantly used against minority and female employees and create a glass ceiling to stop their career advancement in management at the MDC.

34. On July 9, 2001 Plaintiff was given her performance review, which was discussed with Richard Newton. Mr. Newton stated that Plaintiff needed to get back to doing management work to receive above average rating at my job grade. Prior to this review, Plaintiff had received above average/average performance reviews including her many years as an Administrator. Plaintiff feels she is denied the opportunity to be productive and contributing to the MDC organization within Plaintiff's qualifications after so many years of hard work, dedication and loyalty. This situation is very difficult for Plaintiff. Richard Newton stated that Plaintiff does not belong in Engineering & Planning but he had no problem with Plaintiff working for him. He also went on to say that the individual

10

awarded the Utility Manager position deserved it, he had put the time in. Plaintiff replied that only applies to white men. Plaintiff also put in her time and waited for her supervisor's job, but she was abruptly pulled out of the treasury position and then not even <u>qualified</u> for the interview. The job was awarded to a white, non-Hispanic Native American, who was Mr. Milano's past friend. The manner in which she was given the job was not appropriate.

35. Management continues to assign Plaintiff demeaning tasks, below her level of responsibilities. They have shoved Plaintiff in a corner to forget about her hoping she would leave. Plaintiff is no longer invited to attend staff meetings, and in other ways embarrassed and demeaned.

36. One particular time, Neal's (Geldoff) secretary came around to inform everyone of a staff meeting. So Plaintiff asked if that meant Plaintiff and she said I guess so. As Plaintiff was walking in the conference room, Neal turned around and said "You are not needed, you can leave now." It's embarrassing to say that to an Administrator in front of staff.

37. This whole matter has gotten Plaintiff sick to the point of which she required surgery for diverticulitis. As Plaintiff has stood up for her rights and raised her concerns about discriminatory conduct, Plaintiff have faced a series of retaliatory actions, such as lateral moves, the placement without a desk or real job, and the continued embarrassment by Mr. Milano, Neil Geldoff and others.

11

38. The act of the Respondent represent a pattern and practice of discrimination and retal against Plaintiff as a Hispanic female and is part of an overall pattern and practice of Management to discriminate against minority employees and to create a glass ceiling event management level minority employees' advancement and to retaliate against from achieving their full potential and career goals, and thereby create a hostile vng environment and conditions to which Plaintiff is subjected daily. Plaintiff is the only panic Administrator who has, through 25 years of hard work and dedication at the MD orked her way up the ranks to this level. However, Plaintiff has not received a promo since 1984 and has not had an upgrade since 1994. After obtaining the requested M all doors to upper management positions have been closed. Opportunities for training id eventual promotions to management positions are only provided to the chosen.

## COUNT THREE

39. Paragraphs 1 through 38 of Count Two are incorporated as Paragraphs 1 through 38 of Count Three as fully set forth.

40. The Manager of Environment, Health & Safety position was posted in NOV# 57-02. Plaintiff applied for said position in a timely manner and was informed she was not qualified for the position.

12

41. On September 3, 2002, Plaintiff requested and met with Julie McLaughlin, Senior Human Resources Analyst, to inquire why McLaughlin believed Plaintiff was not qualified for the position of Environment, Health & Safety as Ms. McLaughlin had notified Plaintiff by letter of August 29, 2002. Thereupon, Ms. McLaughlin informed Plaintiff that Plaintiff had been qualified for the position, that her initial letter was incorrect; and she replaced it with a letter of September 19, 2002 indicating Plaintiff had not been selected by Robert Moore to be interviewed for the position.

42. The failure to even interview Plaintiff for the position is a clear violation of Affirmative Action Policy which mandates the qualified employees must be interviewed. The Affirmative Action Policy is no longer treated as if it were in effect.

43. The Plaintiff was more qualified than the successful candidate for NOV#57-02 which candidate did not meet the minimum qualifications. The Plaintiff was not selected by the MDC to the position of Manager of Environmental Health & Safety due to discrimination based upon her national origin, sex and in retaliation for prior protected activities.

## COUNT FOUR

44. Paragraphs 1 through 43 of Count Three are incorporated as Paragraphs 1 through 43 in Court Four as fully set forth.

13

45. The Assistant Manager of Operations position was posted in NOV# 60-02. Plaintiff applied for said position in a timely manner.

46. Plaintiff had previously applied for the position of Manager of Operations and was found to be one of the final three candidates, yet Plaintiff was not selected for the Assistant Manager of Operations position (for which Plaintiff was one of the final two candidates).

47. On September 23, 2002, Mr. Harvey Wall was selected by David Donovan, Manager of Operations, to fill the position of Assistant Manager of Operations (NOV# 60-02).

48. Mr. Harvey Wall does not have the experience, record of performance and qualifications Plaintiff does to fill this position. The Plaintiff met the job qualifications and was not selected to fill this position due to discrimination based upon her national origin, sex and retaliation against Plaintiff for previously filing complaint of discrimination.

COUNT FIVE

49. Paragraphs 1 through 48 of Count Four are incorporated as Paragraphs 1 through 48 of Count Five as fully set forth.

50. As a result of Defendants' systematic conduct and actions, carried out under color of state law, Plaintiff has been deprived of and denied her rights, privileges, and immunities guaranteed by the laws of the United States, specifically Title 42, U.S.C.

14

Section 1981, and by the Constitution of the United States, to wit: the failure to be promoted in grade for which she is qualified as a result of Defendant's discrimination against her based upon national origin, sex and retaliation, denying Plaintiff the right to contract for employment as is enjoyed by other citizens.

## COUNT SIX

49. Paragraphs 1 through 48 of Count Four are incorporated as Paragraphs 1 through 48 of Count Six as fully set forth.

50. As a result of defendants' systematic conduct and actions, plaintiff has been deprived of and denied her rights, privileges, and immunities guaranteed by the laws of the United States, specifically Title 42, U.S.C. Section 2000(e) <u>et seq.</u>, to wit: the failure to be promoted in grade, being subjected to a hostile work environment and suffering in the terms and conditions of her employment as a result of defendants' discrimination against her based upon national origin and sex.

## COUNT SEVEN

49. Paragraphs 1 through 48 of Count Four are incorporated as Paragraphs 1 through 48 of Count Seven as fully set forth.

50. As a result of defendants' systematic conduct and actions, plaintiff has been deprived of and denied her rights, privileges, and immunities guaranteed by the laws of the United States, specifically Title 42, U.S.C. Section 2000(e) <u>et seq.</u>, to wit: the retaliation as

a result of defendants' discrimination against her based upon national origin and sex, and being subjected to a hostile work environment.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief against defendant MDC:

1. Compensatory damages in the amount of $2,000,000 or as otherwise awarded;
2. Punitive damages in the amount of $2,000,000 or as otherwise awarded;
3. Lost wages, benefits, service upgrades, seniority and such other lost employment benefits as plaintiff has incurred;
4. For such other relief as the Court deems equitable and appropriate, including costs and reasonable attorney's fees;
5. Promotion to the position of Assistant Manager of Operations;
6. Promotion to the position of Manager of Environmental Health and Safety;
7. Promotion to the position of Manager of Utility Services;
8. Promotion to the position of Manager of Special Engineering Projects;
9. An order by the Court that the Defendant, MDC, comply with all Affirmative Action mandates, including Executive Order 11246, as amended; and that no hiring, position or description changes, promotions, reorganizations or

other changes to personnel or structure are made until the MDC is in complete compliance with Affirmative Action mandates.

PLAINTIFF, DAISY CHAVEZ

By _____
Robert W. Heagney
GILMAN & MARKS
Two Riverview Square
East Hartford, CT 06108
Tel: (860)282-0301
Federal Bar No: ct05658

17

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAISY CHAVEZ
Plaintiff

VS.

THE METROPOLITAN DISTRICT
COMMISSION
Defendant

)
)
)
)
)
)
)
)
)

Case No.

303CV1118(?)

JUNE 9, 2003

## DEMAND FOR A JURY TRIAL

The plaintiff demands a jury trial on all counts above.

Respectfully submitted,

THE PLAINTIFF, DAISY CHAVEZ

By _____
Robert W. Heagney
GILMAN & MARKS
Two Riverview Square
East Hartford, CT 06108
Tel: (860)282-0301
Federal Bar No: ct05658