(Slip Opinion) OCTOBER TERM, 2003 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JONES ET AL. ON BEHALF OF HERSELF AND A CLASS OF OTHERS SIMILARLY SITUATED *v.* R. R. DONNELLEY & SONS CO.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 02–1205.   Argued February 24, 2004—Decided May 3, 2004

After this Court held that federal courts should apply the most appropriate state statute of limitations to claims arising under 42 U. S. C. §1981, which contains no statute of limitations, see *Goodman* v. *Lukens Steel Co.,* 482 U. S. 656, 660, Congress enacted a 4-year statute of limitations for causes of action "arising under an Act of Congress enacted after [December 1, 1990]," 28 U. S. C. §1658(a). Petitioners, African-American former employees of respondent, filed a class action alleging violations of §1981, as amended by the Civil Rights Act of 1991. Respondent sought summary judgment, claiming that the applicable state 2-year statute of limitations barred their claims, but the District Court held that petitioners' wrongful discharge, refusal to transfer, and hostile work environment claims arose under the 1991 Act and therefore are governed by §1658. The Seventh Circuit reversed, concluding that §1658 does not apply to a cause of action based on a post-1990 amendment to a pre-existing statute.

*Held:* Petitioners' causes of action are governed by §1658. Pp. 5–15.

   (a) Because the meaning of "arising under" in §1658 is ambiguous, Congress' intent must be ascertained by looking beyond the section's bare text to the context in which it was enacted and the purposes it was designed to accomplish. Pp. 5–7.

   (b) Before §1658's enactment, Congress' failure to pass a uniform limitations statute for federal causes of action had created a void that spawned a vast amount of litigation. The settled practice of borrowing state statutes of limitations generated a host of issues, such as which of the forum State's statutes was the most appropriate,

2             JONES *v.* R. R. DONNELLEY & SONS CO.

Syllabus

whether the forum State's law or that of the situs of the injury controlled, and when a statute of limitations could be tolled. Congress was keenly aware of these problems, and a central purpose of §1658 was to minimize the need for borrowing. That purpose would not be served if §1658 were interpreted to reach only entirely new sections of the United States Code. An amendment to an existing statute is no less an "Act of Congress" than a new, stand-alone statute. What matters is the new rights of action and corresponding liabilities created by the enactment. Thus, a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990—and therefore is governed by §1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. This construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations, while protecting litigants' settled expectations by applying only to causes of actions not available until after December 1, 1990. It also is consistent with the common usage of "arise" and with this Court's interpretations of "arising under" as it is used in statutes governing the scope of federal subject-matter jurisdiction. Pp. 7–13.

(c) Petitioners' hostile work environment, wrongful termination, and failure-to-transfer claims all "ar[rose] under" the 1991 Act in the sense that they were made possible by that Act. The 1991 Act overturned this Court's decision in *Patterson* v. *McLean Credit Union,* 491 U. S. 164, 171, which held that racial harassment relating to employment conditions was not actionable under §1981. The Act redefined §1981's key "make and enforce contracts" language to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," §1981(b). In *Rivers* v. *Roadway Express, Inc.,* 511 U. S. 298, this Court held that the amendment enlarged the category of conduct subject to §1981 liability, *id.,* at 303, and thus did not apply to a case that arose before it was enacted, *id.,* at 300. *Rivers'* reasoning supports the conclusion that the 1991 Act qualifies as an "Act of Congress enacted after [December 1, 1990]." Petitioners' causes of action clearly arose under the 1991 Act, and the hypothetical problems posited by respondent and the Seventh Circuit pale in comparison with the difficulties that federal courts faced for decades in trying to answer questions raised by borrowing state limitations rules. Pp. 13–15.

305 F. 3d 717, reversed and remanded.

STEVENS, J., delivered the opinion for a unanimous Court.

Cite as: 541 U. S. ____ (2004)  1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 02–1205

EDITH JONES ET AL., ON BEHALF OF HERSELF AND A CLASS OF OTHERS SIMILARLY SITUATED, PETITIONERS *v.* R. R. DONNELLEY & SONS COMPANY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[May 3, 2004]

JUSTICE STEVENS delivered the opinion of the Court.

Like many federal statutes, 42 U. S. C. §1981 does not contain a statute of limitations. We held in *Goodman* v. *Lukens Steel Co.,* 482 U. S. 656, 660 (1987), that federal courts should apply "the most appropriate or analogous state statute of limitations" to claims based on asserted violations of §1981. Three years after our decision in *Goodman*, Congress enacted a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. 28 U. S. C. §1658. The question in this case is whether petitioners' causes of action, which allege violations of §1981, as amended by the Civil Rights Act of 1991 (1991 Act), 105 Stat. 1071, are governed by §1658 or by the personal injury statute of limitations of the forum State.

I

Petitioners are African-American former employees of respondent's Chicago manufacturing division. On November 26, 1994, petitioners filed this class action alleging violations of their rights under §1981, as amended by the

2            JONES *v.* R. R. DONNELLEY & SONS CO.

Opinion of the Court

1991 Act. Specifically, the three classes of plaintiffs alleged that they were subjected to a racially hostile work environment, given an inferior employee status, and wrongfully terminated or denied a transfer in connection with the closing of the Chicago plant. Respondent sought summary judgment on the ground that petitioners' claims are barred by the applicable Illinois statute of limitations because they arose more than two years before the complaint was filed. Petitioners responded that their claims are governed by §1658, which provides: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U. S. C. §1658(a).[1] Section 1658 was enacted on December 1, 1990. Thus, petitioners' claims are subject to the 4-year statute of limitations if they arose under an Act of Congress enacted after that date.

The original version of the statute now codified at Rev. Stat. §1977, 42 U. S. C. §1981, was enacted as §1 of the Civil Rights Act of 1866, 14 Stat. 27. It was amended in minor respects in 1870 and recodified in 1874, see *Runyon* v. *McCrary,* 427 U. S. 160, 168–169, n. 8 (1976), but its basic coverage did not change prior to 1991. As first enacted, §1981 provided in relevant part that "all persons [within the jurisdiction of the United States] shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 14 Stat. 27. We held in *Patterson* v. *McLean Credit Union,* 491 U. S. 164

---

[1] In 2002, Congress amended §1658 to add a separate provision (subsection (b)) specifying the statute of limitations for certain securities law claims. Corporate and Criminal Fraud Accountability Act, Pub. L. 107–204, §804(a), 116 Stat. 801. The original language of §1658 (quoted above) was left unchanged but is now set forth in subsection (a).

Cite as: 541 U. S. ____ (2004) 3

Opinion of the Court

(1989), that the statutory right "to make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract. Under that holding, it is clear that petitioners' hostile work environment, wrongful discharge, and refusal to transfer claims do not state violations of the original version of §1981. In 1991, however, Congress responded to *Patterson* by adding a new subsection to §1981 that defines the term "make and enforce contacts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U. S. C. §1981(b).[2] It is undisputed that petitioners have alleged violations of the amended statute. The critical question, then, is whether petitioners' causes of action "ar[ose] under" the 1991 Act or under §1981 as originally enacted.

The District Court determined that petitioners' wrongful termination, refusal to discharge, and hostile work environment claims arose under the 1991 Act and therefore are governed by §1658. *Adams* v. *R. R. Donnelley & Sons*,

---

[2] The current version of §1981 reads as follows:

"(a) Statement of equal rights

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"(b) 'Make and enforce contracts' defined

"For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

"(c) Protection against impairment

"The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

4         JONES *v.* R. R. DONNELLEY & SONS CO.

Opinion of the Court

149 F. Supp. 2d 459 (ND Ill. 2001).[3] In its view, the plain text of §1658 compels the conclusion that, "whenever Congress, after December 1990, passes legislation that creates a new cause of action, the catch-all statute of limitations applies to that cause of action." *Id.*, at 464. The 1991 amendment to §1981 falls within that category, the court reasoned, because it opened the door to claims of postcontract discrimination that, under *Patterson*, could not have been brought under §1981 as enacted. 149 F. Supp. 2d, at 464.

The District Court certified its ruling for an interlocutory appeal pursuant to 28 U. S. C. §1292(b), and the Court of Appeals reversed. 305 F. 3d 717 (CA7 2002). It concluded that §1658 "applies only when an act of Congress creates a wholly new cause of action, one that does not depend on the continued existence of a statutory cause of action previously enacted and kept in force by the amendment." *Id.*, at 726. The 1991 amendment does not satisfy that test, the court explained, because the text of §1981(b) "simply cannot stand on its own"; instead, it merely redefines a term in the original statute without altering the text that "provides the basic right of recovery for an individual whose constitutional rights have been violated." *Id.,* at 727.

The Court of Appeals' conclusion that §1658 does not apply to a cause of action based on a post-1990 amendment to a pre-existing statute is consistent with decisions from the Third and Eighth Circuits. See *Zubi* v. *AT&T Corp.*, 219 F. 3d 220, 224 (CA3 2000); *Madison* v. *IBP,*

---

[3] The court found matters somewhat less clear with respect to petitioners' claims regarding their employee status (which involved allegations that respondent has a practice of using its African-American employees as "temporary" or "casual" employees), and directed the parties to "sort out this question amongst themselves in light of" its ruling. 149 F. Supp. 2d, at 465.

Cite as: 541 U. S. ____ (2004)     5

Opinion of the Court

*Inc.*, 257 F. 3d 780, 798 (CA8 2001). Conversely, the Courts of Appeals for the Sixth and Tenth Circuits have held that §1658 applies "whenever Congress, after December 1990, passes legislation that creates a new cause of action," whether or not the legislation amends a pre-existing statute. *Harris* v. *Allstate Insurance Co.*, 300 F. 3d 1183, 1190 (CA10 2002); accord, *Anthony* v. *BTR Automotive Sealing System, Inc.*, 339 F. 3d 506, 514 (CA6 2003). We granted certiorari to resolve the conflict in the Circuits, 538 U. S. 1030 (2003), and now reverse.

II

Petitioners, supported by the United States as *amicus curiae,* argue that reversal is required by the "plain language" of §1658, which prescribes a 4-year statute of limitations for "civil action[s] arising under an Act of Congress enacted after" December 1, 1990. They point out that the 1991 Act is, by its own terms, an "Act" of Congress that was "enacted" after December 1, 1990. See Pub. L. 102–166, 105 Stat. 1071. Moreover, citing our interpretations of the term "arising under" in other federal statutes and in Article III of the Constitution, petitioners maintain that their causes of action arose under the 1991 Act.

Respondent concedes that the 1991 Act qualifies as an "Act of Congress enacted" after 1991, but argues that the meaning of the term "arising under" is not so clear. We agree. Although our expositions of the "arising under" concept in other contexts are helpful in interpreting the term as it is used in §1658, they do not point the way to one obvious answer. For example, Chief Justice Marshall's statement that a case arises under federal law for purposes of Article III jurisdiction whenever federal law "forms an ingredient of the original cause," *Osborn* v. *Bank of United States,* 9 Wheat. 738, 823 (1824), supports petitioners' view that their causes of action arose under

6          JONES *v.* R. R. DONNELLEY & SONS CO.

Opinion of the Court

the 1991 amendment to §1981, because the 1991 Act clearly "forms an ingredient" of petitioners' claims.[4] But the same could be said of the original version of §1981. Thus, reliance on *Osborn* would suggest that petitioners' causes of action arose under the pre-1991 version of §1981 as well as under the 1991 Act, just as a cause of action may arise under both state and federal law. As the Court of Appeals observed, however, §1658 does not expressly "address the eventuality when a cause of action 'arises under' two different 'Acts,' one enacted before and one enacted after the effective date of §1658." 305 F. 3d, at 724.

Petitioners argue that we should look not at Article III, but at how Congress has used the term "arising under" in federal legislation. They point in particular to the statutes in Title 28 that define the scope of federal subject-matter jurisdiction.[5] We have interpreted those statutes to mean that a claim arises under federal law if federal law provides a necessary element of the plaintiff's claim for relief.[6] Petitioners recognize that we have construed

---

[4] Indeed, the same would appear to be true of virtually *any* substantive amendment, whether or not the plaintiff could have stated a claim pre-amendment.

[5] See, *e.g.,* 28 U. S. C. §1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States"); §1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks").

[6] See, *e.g., Christianson* v. *Colt Industries Operating Corp.,* 486 U. S. 800, 808 (1988) (a case may "arise under" federal law if "federal law is a necessary element of [a claim]"); *Holmes Group, Inc.* v. *Vornado Air Circulation Systems, Inc.,* 535 U. S. 826, 830 (2002) (a claim "arises under" patent law if either "federal patent law creates the cause of action" or "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law").

Cite as: 541 U. S. ____ (2004)           7

Opinion of the Court

the term more broadly in other statutes,[7] but argue that the placement of §1658 in Title 28 suggests that Congress meant to invoke our interpretation of the neighboring jurisdictional rules. We hesitate to place too much significance on the location of a statute in the United States Code. But even if we accepted the proposition that Congress intended the term "arising under" to have the same meaning in §1658 as in other sections of Title 28, it would not follow that the text is unambiguous. We have said that "[t]he most familiar definition of the statutory 'arising under' limitation" is the statement by Justice Holmes that a suit "'arises under the law that creates the cause of action,'" *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.,* 463 U. S. 1, 8–9 (1983) (quoting *American Well Works Co.* v. *Layne & Bowler Co.,* 241 U. S. 257, 260 (1916)). On one hand, that statement could support petitioners' view that their causes of action arose under the 1991 Act, which created a statutory right that did not previously exist. On the other hand, it also could support respondent's claim that petitioners' causes of action arose under the original version of §1981, which contains the operative language setting forth the elements of their claims. Justice Holmes' formulation even could support the view that petitioners' claims arose under both versions of the statute. Cf. *T. B. Harms Co.* v. *Eliscu*, 339 F. 2d 823, 827 (CA2 1964) (Friendly, J.) ("It has come to be realized that Mr. Justice Holmes' formula is more useful for inclusion than for the exclusion for which it was intended"). In order to ascertain Congress' intent, therefore, we must look beyond the bare text of §1658 to the context in which it was enacted and the

---

[7] See, *e.g., Heckler* v. *Ringer,* 466 U. S. 602, 615 (1984) (a claim arises under the Medicare Act for purposes of 42 U. S. C. §405(h) when "both the standing and the substantive basis for presentation" of the claim is the Medicare Act).

8      JONES *v.* R. R. DONNELLEY & SONS CO.

Opinion of the Court

purposes it was designed to accomplish.

### III

In *Board of Regents of Univ. of State of N. Y.* v. *Tomanio,* 446 U. S. 478, 483 (1980), we observed that Congress' failure to enact a uniform statute of limitations applicable to federal causes of action created a "void which is commonplace in federal statutory law." Over the years that void has spawned a vast amount of litigation. Prior to the enactment of §1658, the "settled practice was to adopt a local time limitation as federal law if it [was] not inconsistent with federal law or policy to do so." *Wilson* v. *Garcia,* 471 U. S. 261, 266–267 (1985). Such "[l]imitation borrowing," *Board of Regents* v. *Tomanio,* 446 U. S., at 484, generated a host of issues that required resolution on a statute-by-statute basis. For example, it often was difficult to determine which of the forum State's statutes of limitations was the most appropriate to apply to the federal claim. We wrestled with that issue in *Wilson* v. *Garcia*, in which we considered which state statute provided the most appropriate limitation principle for claims arising under 42 U. S. C. §1983. 471 U. S., at 268, 276–279 (resolving split of authority over whether the closest state analogue to an action brought under §1983 was an action for tortious injury to the rights of another, an action on an unwritten contract, or an action for a liability on a statute). Before reaching that question, however, we first had to determine whether the characterization of a §1983 claim for statute of limitations purposes was an issue of state or federal law and whether all such claims should be characterized in the same way. *Ibid.* Two years later, in *Goodman* v. *Lukens Steel Co.*, we answered the same three questions for claims arising under §1981. 482 U. S., at

Cite as: 541 U. S. ____ (2004)            9

Opinion of the Court

660, 661–662. Both decisions provoked dissent[8] and further litigation.[9]

The practice of borrowing state statutes of limitation also forced courts to address the "frequently present problem of a conflict of laws in determining which State statute [was] controlling, the law of the forum or that of the situs of the injury." S. Rep. No. 619, 84th Cong., 1st Sess., 4–6 (1955) (discussing problems caused by borrowing state statutes of limitations for antitrust claims).[10] Even when courts were able to identify the appropriate state statute, limitation borrowing resulted in uncertainty for both plaintiffs and defendants, as a plaintiff alleging a federal claim in State A would find herself barred by the local statute of limitations while a plaintiff raising precisely the same claim in State B would be permitted to proceed. *Ibid.* Interstate variances of that sort could be especially confounding in class actions because they often posed problems for joint resolution. See Memorandum from R. Marcus, Assoc. Reporter to Workload Subcommittee (Sept. 1, 1989), reprinted in App. to Vol. 1 Federal Courts Study Committee, Working Papers and Subcommittee Reports (1990), Doc. No. 5, p. 10 (hereinafter Marcus Memoran-

---

[8] See *Wilson* v. *Garcia,* 471 U. S. 261, 280 (1985) (O'CONNOR, J., dissenting); *Goodman* v. *Lukens Steel Co.,* 482 U. S. 656, 669 (1987) (Brennan, J., concurring in part and dissenting in part); *id.*, at 680 (Powell, J., concurring in part and dissenting in part).

[9] See, *e.g., Smith* v. *Firestone Tire & Rubber Co.*, 875 F. 2d 1325, 1326–1328 (CA7 1989) (concluding that the rule established in *Goodman* did not apply retroactively).

[10] The problems associated with borrowing state statutes of limitations prompted Congress in 1955 to enact a federal period of limitations governing treble damages actions under the antitrust laws. 15 U. S. C. §15b. See S. Rep. No. 619, at 5 (explaining that "[i]t is one of the primary purposes of this bill to put an end to the confusion and discrimination present under existing law where local statutes of limitations are made applicable to rights granted under our Federal laws").

10          JONES *v.* R. R. DONNELLEY & SONS CO.

Opinion of the Court

dum). Courts also were forced to grapple with questions such as whether federal or state law governed when an action was "commenced," or when service of process had to be effectuated. See *Sentry Corp.* v. *Harris*, 802 F. 2d 229 (CA7 1986) (addressing those issues in the wake of our decision in *Wilson*). And the absence of a uniform federal limitations period complicated the development of federal law on the question when, or under what circumstances, a statute of limitations could be tolled. See 802 F. 2d, at 234–242 (discussing conflicting authority on whether tolling was a matter of state or federal law); *Board of Regents* v. *Tomanio*, 446 U. S., at 485 (explaining that "'borrowing' logically included [state] rules of tolling").

Those problems led both courts and commentators to "cal[l] upon Congress to eliminate these complex cases, that do much to consume the time and energies of judges but that do little to advance the cause of justice, by enacting federal limitations periods for all federal causes of action." *Sentry Corp.* v. *Harris*, 802 F. 2d, at 246.[11] Congress answered that call by creating the Federal Courts Study Committee, which recommended the enactment of a retroactive, uniform federal statute of limitations.[12] As we have noted, §1658 applies only to claims arising under statutes enacted after December 1, 1990, but it otherwise follows the Committee's recommendation. The House

---

[11] See also, *e.g.,* Special Project, Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations, 65 Cornell L. Rev. 1011, 1105 (1980); Blume & George, Limitations and the Federal Courts, 49 Mich. L. Rev. 937, 992–993 (1951); Note, Federal Statutes Without Limitations Provisions, 53 Colum. L. Rev. 68, 77–78 (1953); Note, Disparities in Time Limitations on Federal Causes of Action, 49 Yale L. J. 738, 745 (1940).

[12] A report prepared for the Committee concluded that "there is little to be said in favor of the current situation and there seems to be no identifiable support for continuing this situation." Marcus Memorandum 1.

Cite as: 541 U. S. ____ (2004) 11

Opinion of the Court

Report accompanying the final bill confirms that Congress was keenly aware of the problems associated with the practice of borrowing state statutes of limitations, and that a central purpose of §1658 was to minimize the occasions for that practice.[13]

The history that led to the enactment of §1658 strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges.[14] The interpretation favored by respondent and the Court of Appeals subverts that goal by restricting §1658 to cases in which the plaintiff's cause of action is based solely on a post-1990 statute that "'establishes a new cause of action without reference to preexisting law.'" 305 F. 3d, at 727 (quoting *Zubi* v. *AT&T Corp.*, 219 F. 3d, at 222). On that view, §1658 would apply only to a small fraction of post-1990 enactments. Congress routinely creates new rights of action by amending existing statutes, and "[a]ltering statutory definitions, or adding new definitions of terms previously undefined, is a common way of amending statutes." *Rivers* v. *Roadway Express, Inc.,* 511 U. S. 298, 308 (1994). Nothing in the text or history of §1658 supports an interpretation that would limit its

---

[13] The House Report notes "a number of practical problems" created by the practice of borrowing statutes of limitations: "'It obligates judges and lawyers to determine the most analogous state law claim; it imposes uncertainty on litigants; reliance on varying state laws results in undesirable variance among the federal courts and disrupts the development of federal doctrine on the suspension of limitation periods.'" H. R. Rep. No. 101–734, p. 24 (1990).

[14] A few years after §1658 was enacted, we described it as supplying "a general, 4-year limitations period for any federal statute subsequently enacted without one of its own." *North Star Steel Co.* v. *Thomas,* 515 U. S. 29, 34, n. (1995). In his separate opinion in that case, JUSTICE SCALIA captured the basic purpose of §1658 when he observed that "a uniform nationwide limitations period for a federal cause of action is *always* more appropriate" than a rule that applies in some States but not in others. *Id.,* at 37 (opinion concurring in judgment).

Opinion of the Court

reach to entirely new sections of the United States Code. An amendment to an existing statute is no less an "Act of Congress" than a new, stand-alone statute. What matters is the substantive effect of an enactment—the creation of new rights of action and corresponding liabilities—not the format in which it appears in the Code.

The Court of Appeals reasoned that §1658 must be given a narrow scope lest it disrupt litigants' settled expectations. The court observed that Congress refused to make §1658 retroactive because, "'with respect to many statutes that have no explicit limitations provision, the relevant limitations period has long since been resolved by judicial decision,'" and "'retroactively imposing a four year statute of limitations on legislation that the courts have previously ruled is subject to a six month limitations period in one [State], and a ten year period in another, would threaten to disrupt the settled expectations of . . . many parties.'" 305 F. 3d, at 725 (quoting H. R. Rep. No. 101–734, p. 24 (1990)). Concerns about settled expectations provide a valid reason to reject an interpretation of §1658 under which any new amendment to federal law would suffice to trigger the 4-year statute of limitations, regardless of whether the plaintiff's claim would have been available—and subject to a state statute of limitations—prior to December 1, 1990. Such concerns do not, however, carry any weight against the reading of §1658 adopted by the District Court and urged by petitioners, under which the catchall limitations period applies only to causes of action that *were not available* until after §1658 was enacted. If a cause of action did not exist prior to 1990, potential litigants could not have formed settled expectations as to the relevant statute of limitations that would then be disrupted by application of §1658.

We conclude that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990—and therefore is governed by §1658's 4-year statute of limita-

Cite as: 541 U. S. ____ (2004)  13

Opinion of the Court

tions—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. That construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time protecting settled interests. It spares federal judges and litigants the need to identify the appropriate state statute of limitations to apply to new claims but leaves in place the "borrowed" limitations periods for preexisting causes of action, with respect to which the difficult work already has been done.

Interpreting §1658 to apply whenever a post-1990 enactment creates a new right to maintain an action also is consistent with the common usage of the word "arise" to mean "come into being; originate"[15] or "spring up."[16] Finally, that construction is consistent with our interpretations of the term "arising under" as it is used in statutes governing the scope of federal subject-matter jurisdiction. By contrast, nothing in our case law supports an interpretation as narrow as that endorsed by the Court of Appeals, under which "arising under" means something akin to "based solely upon." We should avoid reading §1658 in such a way as to give the familiar statutory language a meaning foreign to every other context in which it is used.

IV

In this case, petitioners' hostile work environment, wrongful termination, and failure-to-transfer claims "ar[ose] under" the 1991 Act in the sense that petitioners' causes of action were made possible by that Act. *Patterson* held that "racial harassment relating to the conditions of

---

[15] American Heritage Dictionary 96 (4th ed. 2000); Black's Law Dictionary 138 (rev. 4th ed. 1968).

[16] Oxford English Dictionary 629 (2d ed. 1989); Black's Law Dictionary, at 138.

14          JONES *v.* R. R. DONNELLEY & SONS CO.

Opinion of the Court

employment is *not actionable* under §1981." 491 U. S., at 171 (emphasis added). The 1991 Act overturned *Patterson* by defining the key "make and enforce contracts" language in §1981 to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U. S. C. §1981(b). In *Rivers* v. *Roadway Express, Inc.,* we recognized that the 1991 amendment "enlarged the category of conduct that is subject to §1981 liability," 511 U. S., at 303, and we therefore held that the amendment does not apply "to a case that arose before it was enacted," *id.,* at 300. Our reasoning in *Rivers* supports the conclusion that the 1991 Act fully qualifies as "an Act of Congress enacted after [December 1, 1990]" within the meaning of §1658. Because petitioners' hostile work environment, wrongful termination, and failure-to-transfer claims did not allege a violation of the pre-1990 version of §1981 but did allege violations of the amended statute, those claims "ar[ose] under" the amendment to §1981 contained in the 1991 Act.

While that conclusion seems eminently clear in this case,[17] respondent has posited various hypothetical cases in which it might be difficult to determine whether a particular claim arose under the amended or the unamended version of a statute. Similarly, the Court of Appeals reasoned that applying §1658 to post-1990 amendments could be problematic in some cases because "'the line between an amendment that modifies an existing right and one that creates a new right is often difficult to draw.'" 305 F. 3d, at 725 (quoting *Zubi* v. *AT&T Corp.*, 219 F. 3d, at 224). We are not persuaded that any "guess

---

[17] Indeed, respondent concedes that, "[i]n this case, the nature of the 'new' claim is clear. It is recognized that liability under §1981 was expanded, because this Court had spoken on the scope of §1981 and Congress reversed the Court's interpretation in the Civil Rights Act of 1991." Brief for Respondent 26.

work," 305 F. 3d, at 725, is required to determine whether the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990, or whether her claims necessarily depend on a subsequent amendment. Courts routinely make such determinations when dealing with amendments (such as the 1991 amendment to §1981) that do not apply retroactively.[18] In any event, such hypothetical problems pale in comparison with the difficulties that federal courts faced for decades in trying to answer all the questions raised by borrowing appropriate limitations rules from state statutes.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[18] Respondent argues that the question whether a plaintiff's cause of action would have been viable prior to a post-1991 amendment will be particularly complicated in cases in which there was a split of authority regarding the scope of the original statute. In such cases, courts will have to determine whether the amendment clarified existing law or created new rights and liabilities. Such analysis is hardly beyond the judicial ken: Courts must answer precisely the same question when deciding whether an amendment may be applied retrospectively. See, *e.g., Hughes Aircraft Co.* v. *United States ex rel. Schumer,* 520 U. S. 939, 948–950 (1997). The substantial overlap between the retroactivity and statute-of-limitations inquiries undermines respondent's claim that application of §1658 to post-1991 amendments will generate additional work for federal judges.