UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAISY CHAVEZ | : |
| | : No. 3:03CV1112(MRK) |
| VS. | : |
| | : |
| METROPOLITAN DISTRICT COMMISSION | : March 20, 2005 |
| | : |

PLAINTIFF'S MEMORANDUM OF LAW
RE COLLATERAL ESTOPPEL AND RETALIATION CLAIM

I.   FACTS

On March 13, 2002, Plaintiff filed a Summons and Complaint in the matter Chavez v .Metropolitan District Commission ("MDC"), docket no. 3:02cv458. This case noted prior proceedings in the Connecticut Commission on Human Rights and Opportunities, commenced on August 9, 2001. This action was the subject of a decision of this Court on June 1, 2004, granting summary judgment in part and denying it in part. On the issue of retaliation, the court ruled:

> Defendant also challenges Ms. Chavez's retaliation claim under Title VII, arguing that she has offered no evidence that any adverse employment action she suffered was a result of any protected activity. Def's Mem. of Law [*Chavez* doc. #23] at 27. The Second Circuit has clarified that in order to establish a *prima facie* case of retaliation, "a plaintiff must demonstrate that (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (internal quotations omitted). As far as the Court can tell, Ms. Chavez did not even respond to this argument in her Objection to the Motion for Summary Judgment [*Chavez* doc. #30]. The Court has found no evidence

1

>       whatsoever in Ms. Chavez's submissions of retaliation for engaging in protected activity. Indeed, in Ms. Chavez's deposition, which the Court has reviewed in connection with the pending motions, Ms. Chavez states that she has no idea why Defendant allegedly retaliated against her.

Slip Opinion, p. 6.

     The instant case - captioned above - was commenced by Summons and Complaint filed on June 24, 2003. The case noted a prior proceeding, inaddition to the first CHRO complaint and the first referenced federal suit, a second CHRO proceeding commenced on October 22, 2002.

     The Complaints in the two cases - 3:02cv458 and 3:03cv1112 may begin with similar allegations, but by paragraph 17, the two diverge and for the most part remain distinctly different. The instant case - 3:03cv1112 - contains much less description of the events of 1999 and 2000, but does, in a vastly extended Count Two, elaborate many more facts relevant to the claim of retaliation than the first suit ever alleged. No one to one correspondence is possible between the two Complaints. The current case references, for instance, assignments to demeaning tasks, her exile from staff meetings, and other means of embarrassing and demeaning her. [*e.g.*, Complaint, ¶¶ 33, 34, 35, 36]. These claims are not to be found in the first case. Nor is the time frame the same, since the second case covers violations of law by Defendant occurring more than a year's time beyond the filing date of the first case. Furthermore, attached hereto is Plaintiff's affidavit detailing over the course of four pages the source of and kinds of retaliation which she experienced. Whatever lapses may have occurred when prior counsel responded to Defendant's Motion for Summary Judgment, we hope are now corrected.

**II.     ARGUMENT**

    **A.     INTRODUCTORY**

The issue here is whether the Defendant's oral motion for Judgment on the issue of retaliation in the instant case should be granted on the basis of collateral estoppel. The Court has directed the Plaintiff - the non-moving party - to brief the issue first, allowing the moving party a week to respond.

    **B.     PROTECTED ACTIVITY REQUIREMENT MET**

As the Court in the above-quoted Memorandum of Decision stated that it found "no evidence whatsoever in Ms. Chavez's submissions of retaliation for engaging in protected activity", we have submitted Plaintifff's Affidavit on this issue as it pertains to the allegations made in the current Complaint.

From her Affidavit, it is clear that the event that gave rise to the retaliation was her request as a woman, indeed as a Hispanic woman, to be considered for promotion in 1998. Before that, all was well, all was quiet. But, once she asked for a promotion, she was marked. And the retaliation followed within a couple months. Nor is MDC free from using this weapon. As the Levy & Droney Report frankly acknowledges, Sharon Harper was subjected to retaliation culminating in termination, when as a black woman, she too sought a promotion. And so the jury found.

When Daisy Chavez submitted her application for promotion to a management position, it was because "enough was enough". Fourteen years without promotion, four years without a pay upgrade was enough - too much in fact. She knew the risks. But she was engaging in a protected activity no less than was Rosa Parks, when on that day in December, 1955, she chose to sit in the front of that bus in Montgomery, Alabama, and refused to give up her seat to a white woman. If the

1964 Civil Rights Act had existed then, no one would have doubted that that simple act of protest, of standing up for her rights, was a protected activity under the statute. Indeed, that was just the kind of protected activity - along with taking a seat in a white only diner, for instance - that the statute was designed to protect. And applying for a promotion in a white only, good old boys operation amounts to the same thing. Surely, this satisfies the protected activity requirement of Section 704(a) of Title VII, 42 U. S. Code §2000e-3(a). See Deravin v. Kerik, 335 F.3d 195 (2nd Cir. 2003), holding:

> As courts have consistently recognized, the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations. See, e.g., *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999) ("The words `participate in any manner' express Congress' intent to confer `exceptionally broad protection' upon employees covered by Title VII."); *see also Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir.), *cert. denied*, 531 U.S. 1052 (2000); *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999). As the Supreme Court has noted, "[r]ead naturally, the word `any' has an expansive meaning," and thus, so long as "Congress did not add any language limiting the breadth of that word," the term "any" must be given literal effect. *United States v. Gonzales*, 520 U.S. 1, 5 (1997).

335 F.3d @ 203-204.

The list of the kinds of retaliation are substantial and significant. For years after she started applying for promotions, the MDC engaged in continuous retaliatory action persisted in over a course of years, commencing with the effective demotion to a "temporary" position, loss of management responsibilities, loss of a staff, loss of a meaningful job description, loss of a budget. She has been subjected to on-going retaliation as it affected her ability to attend seminars and conferences that she used to regularly attend. She was even told not to attend one for which money had been allocated for her specifically. She has been continuously denied all but minimal in-house training, one seminar excepted. She has had undue difficulty in obtaining reimbursement for the one

conference she was allowed to attend. She has been repeatedly denied a move from the open space in the center of the room where she worked. She has endured a rain of abuse designed to drive her from her job. But she has endured.

That the MDC knew she applied for the promotions is not denied. That there is evidence that the adverse employment action taken against her is causally connect is satisfied by the short time frame between the application for promotion and the imposing of the "temporary" assignment that lasted for most of the years that she sought promotions. See Davis v. State University of New York, 802 F. 2d 638, 642 (2d Cir. 1986) and Manoharan v. Columbia Univ. Coll. of Physicians and Surgeons, 842 F. 2d 590 (2d Cir. 1988) for discussions of protected activity soon followed by adverse action.

### C. THE LAW OF COLLATERAL ESTOPPEL

The Second Circuit has very recently stated once again the elements of collateral estoppel in Faulkner v. Mindscape, Inc., 04-0263 (2nd Cir. March 5, 2005), copy attached.

> In order for a plaintiff to bar a defendant from litigating an issue on collateral estoppel grounds: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986). *Use of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged*." Commissioner v. Sunnen, 333 U.S. 591, 599-600 (1948).
>
> [Emphasis added]

Slip Opinion @ 7,8.

### D.     COLLATERAL ESTOPPEL DOES NOT APPLY TO THE INSTANT CASE

#### 1.     The Issues "Necessary to Support a Valid and Final Judgment" Have Not Been Identified

The fouth element of the Faulkner opinion, namely that "the issue previously litigated must have been necessary to support a valid and final judgment on the merits" is missing here. Which element of the retaliation claim has been fully and fairly decided? Defendant has failed to state which element or elements Plaintiff must addressed, and as Plaintiff has had to brief the issue first, Plaintiff is not in a position to know what issue Defendant will choose in its responsive brief.

#### 2.     In Any Case, The Issues are not Identical.

First, as noted in the factual section, the instant case, the second of the two, was brought about 15 months after the first. Further facts arose in the interim. Even the CHRO Complaint on which the Title VII claim of the instant case was brought was filed about 15 months after the first CHRO claim. To deny significance to the time frame would be do deny a claim that has never been litigated.

Second, the factual allegations made in the instant suit are significantly different from those in the first. While in the first Complaint, lip service is paid to the word "retaliation", little, if nothing is actually detailed there. The second Complaint, however, makes factual allegations not seen in the first Complaint. See Complaint, ¶¶ 33, 34, 35, 36. The specifics are discussed above and include assignments to demeaning tasks, her exile from staff meetings, and other means of embarrassing and demeaning her. The affidavit filed in support of this Memorandum supplies still further details.

The U. S. Supreme Court (see italicized portion of quotation in Section C above), as well as the Second Circuit, requires that the issues be "identical in all respects". Not close, not similar. Identical. That strict standard is not met here.

### 3. There has not been a full and fair opportunity to litigate the issue of retaliation

The issue of retaliation was not fully and fairly litigated in the Summary Judgment proceeding in the first case. For whatever reason unknown to current counsel, prior counsel did not address the issue of retaliation. The above-quoted opinion of the Court in its Memorandum of Decision emphasizes the total lack of evidence and discussion on this point in Plaintiff's response to the Defendant's Motion for Summary Judgment. "As far as the Court can tell, Ms. Chavez did not even respond to this argument in her Objection to the Motion for Summary Judgment." Judge Kravitz, Memorandum of Decision, p. 6. This wording speaks not to a full and fair litigation of the issue, but to a default in responding to the issue raised. Perhaps, Plaintiff's counsel did not realize that the issue of retaliation was addressed separate and apart from the other issues. It is inconceivable that if Plaintiff's counsel had known of the issue that it would not have addressed it. It is customary for attorneys in federal practice to overtly concede issues where they have no evidence. But even that did not occur in the case under discussion. There was a default, nothing more. As such, it did not reach the merits of Plaintiff's claim of retaliation. The issues were not litigated, fairly or otherwise. Plaintiff's counsel simply did not address the issue one way or another. In any case, as the lawsuit has not yet gone to trial, Plaintiff ought not to be made to suffer for the lapse of her prior counsel when the evidence now before the Court shows that the issue should be dealt with at trial, under the first case as well as the second.

The first case is not over yet. No final judgment has entered. The case has not even been tried. Plaintiff has the opportunity to address the Court's ruling by way of appeal or by way of a motion under F.R.C.P. §60(b), a motion which current counsel is actively exploring. To rule that the similar issue in the instant case is barred by collateral estoppel would deny Plaintiff the opportunity to ever fully and fairly litigate the issue.

The Court's statement (quoted in the Facts section) that "Indeed, in Ms. Chavez's deposition, which the Court has reviewed in connection with the pending motions, Ms. Chavez states that she has no idea why Defendant allegedly retaliated against her[,]" failed to treat the statement in the light most favorable to Plaintiff. In the accompanying affidavit, she makes it clear that she was not saying that she did not suffer unlawful retaliation for seeking a promotion, but that she was unable to probe the minds of such persons to understand why they would do such a thing. Often times, lawyers and judges expect the ordinary person to use the precise and specialized language of law, rather than their own common sense use of words. Allowance must be made for the ordinary use of words.

**4.    There Would be No Undue Prejudice to Defendant to Correct the Prior Ruling At this Time**

Defendant has known that despite the ruling in the first case, the issue of retaliation has remained in the second case. Defendant must be presumed to be preparing to meet that claim in the imminent trial. Therefore, Defendant cannot now claim prejudice if Plaintiff is allowed to pursue the claim for a determination on the merits, either under the second case or under both cases.

## IV. CONCLUSION

For the reasons set forth herein, the Court ought not to invoke collateral estoppel to bar the Plaintiff's claim for retaliation in the instant case.

                              PLAINTIFF
                              DAISY CHAVEZ

By_____
                              Francis A. Miniter
                              Miniter and Associates
                              100 Wells Street, Suite 1D
                              Hartford, CT 06103
                              phone 860-560-2590
                              fax    860-560-3238
                              email: miniter@attglobal.net
                              Fed. ID No. CT09566

## CERTIFICATION OF SERVICE

The undersigned does hereby certify that a true copy of the foregoing together with all attachments thereto was delivered to the following counsel of record by placing the same in the U.S. Postal Service, regular mail, postage prepaid, on March 21, 2005:

Holly Quackenbush Darin, Esq.
David Ryan, Esq.
Ryan & Ryan
900 Chapel Street, Suite 621
New Haven, CT  06510

                              _____
                              Francis A. Miniter