UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAISY CHAVEZ, | : | CIVIL ACTION |
| | | 3:02CV458 (MRK) |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| METROPOLITAN DISTRICT | : | |
| COMMISSION, | : | |
| Defendant | : | MARCH 28, 2005 |

**DEFENDANT'S MEMORANDUM IN REPLY TO
PLAINTIFF'S MEMORANDUM OF LAW RE: COLLATERAL
ESTOPPEL AND RETALIATION CLAIM**

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff Daisy Chavez (hereinafter "Plaintiff Chavez") has filed two suits against the Defendant Metropolitan District Commission (hereinafter "Defendant MDC") which have now been consolidated for trial. The allegations in her first suit entitled <u>Chavez v. The Metropolitan District Commission</u>, 3:03 CV 00458 (MRK) (hereinafter "Chavez 1") relate to incidents and conduct by the Defendant MDC up to and including July 9, 2001 for which the Plaintiff Chavez filed a CHRO complaint on August 9, 2001 and later filed suit in Federal Court. <u>See</u> Chavez 1 at ¶ 6.

On or about October 1, 2003, the Defendant MDC moved for summary judgment on all four counts in Chavez 1. With respect to the Plaintiff Chavez's claim of retaliation under Title VII, the Defendant MDC argued that the Plaintiff Chavez "offered no evidence that any adverse employment action she suffered was a result of any protected activity" and submitted excerpts from the Plaintiff Chavez's deposition transcript in

1

which she testified that she did not know the reasons why the Defendant retaliated against her. See Defendant MDC's Memorandum of Law in Support of Motion for Summary Judgment at p. 27.

The Plaintiff Chavez was represented by counsel at the time the Motion for Summary Judgment was filed and her counsel filed an **<u>extensive</u>** opposition to the Motion for Summary Judgment which included her own affidavit. However, in her opposition, the Plaintiff Chavez did not oppose and/or refute the Defendant MDC's contention that there was no evidence to demonstrate that any adverse action taken against her was the result of her participation in protected activity and she made no effort to explain her deposition testimony in which she clearly stated that she did not know why the Defendant had retaliated against her.

In fact, the Court in granting the Defendant MDC's Motion for Summary Judgment as to the Plaintiff's Title VII retaliation claim stated:

> The Court has found no evidence whatsoever in Ms. Chavez's submissions of retaliation for engaging in protected activity. Indeed, in Ms. Chavez's deposition, which the Court has reviewed in connection with the pending motions, Ms. Chavez states she has no idea why Defendant allegedly retaliated against her. . . . In short, there is not even a suggestion in the evidence of a causal connection between any protected activity and any adverse action. [T]he Court...must conclude that Ms. Chavez has failed to establish a *prima facie* case of retaliation.

2004 U.S. Dist. LEXIS 11266 at *10 (D. Conn., June 1, 2004).

The Plaintiff Chavez did not move for reconsideration of the Court's ruling even though the Plaintiff Chavez now contends (1) that the protected activity which allegedly caused the Defendant's retaliatory conduct was her application for the position for Asst. Director of Water Treatment & Supply in May 1998 almost four years prior to the filing

2

of her first complaint in March of 2002;[1] and (2) that "[t]he Court completely missed what [she] was trying to say" when she testified during her deposition that she had no idea "why" the Defendant retaliated against her. According to her, the Defendant MDC and the Court allegedly "missed" the fact that what she really meant was that she knows that the Defendant discriminated and retaliated against her and did so on the basis of her gender, race, ethnicity and national origin but she did not know why and she will never know "when it comes to bigots" why they do what they do." See Affidavit of Daisy Chavez dated March 21, 2005 (hereinafter "Chavez Aff.") at ¶¶ 6 & 19.

On or about October 22, 2002 the Plaintiff Chavez filed a second suit with the CHRO, which was subsequently filed in Federal Court on or about June 24, 2003 entitled Chavez v. The Metropolitan District Commission 3:03CV01112(MRK) (hereinafter "Chavez 2").

The allegations contained in Counts One and Two of Chavez 2 rely upon virtually the same allegations as contained in Chavez 1 (i.e. conduct and incidents occurring prior to the filing of the first CHRO complaint on August 9, 2001).[2] In fact, the **only** allegations in Counts One and Two of Chavez 2 which are not contained in Chavez 1, are paragraphs 6a, paragraph 18,[3] and paragraphs 24 through 26 relating to the

---

[1] It is important to note that the position of Asst.to the Director of Water Treatment & Supply is not mentioned in Chavez 1 or Chavez 2 or the actions filed before the CHRO on August 9, 2001 and October 22, 2002 even though the Plaintiff Chavez now contends her application for this position was the protected activity which caused the Defendant's subsequent retaliatory conduct. In fact, the first time that the Defendant MDC learned that Daisy Chavez was claiming that this position might be at issue in this litigation was when the Joint Trial Memorandum for the consolidated cases was prepared in February 2005 and the Plaintiff Chavez listed documents relating to the positions as potential exhibits!!! When the parties submitted their previous Joint Trial Memorandum in Chavez 1 no exhibits relating to this position were identified by the Plaintiff Chavez as potential exhibits.

[3] This paragraph simply alleges that Chavez filed a second CHRO complaint on October 22, 2002.

3

Defendant MDC's Affirmative Action Plan.  The remaining allegations are **contained** within the allegations in Chavez 1. [4]  See Chavez 1 and Chavez 2 complaints.

Counts Three through Seven of Chavez 2 also allege discrimination and retaliation, incorporate the allegations contained in Counts One and Two, and add additional allegations relating to subsequent retaliatory and discriminatory conduct beginning with the posting of the Manager of Environmental Health and Safety position in June, 2002.  This subsequent conduct is not at issue nor a part of the Defendant MDC's Motion to Preclude.

On February 10, 2004 the Defendant Metropolitan District Commission ("hereinafter Defendant MDC") filed a Motion in Limine to Preclude And/or Limit Evidence Of Alleged Retaliation with an attached Memorandum of Law (hereinafter "Motion in Limine") seeking to limit the evidence the Plaintiff Chavez could produce at trial in support of her claims of retaliation.[5] Specifically, the Defendant MDC argued that evidence of retaliatory conduct by the Defendant MDC prior to August 9, 2001 [6] is barred by principles of res judicata and/or collateral estoppel based upon the Court's prior ruling on June 1, 2004 in Chavez 1 granting the Defendant MDC's Motion for Summary Judgment on the Plaintiff Chavez's retaliation claim.

---

[4] Specifically, as to Count One of Chavez 2, paragraph 20 is identical to paragraph 28 of Chavez 1, and paragraphs 21 and 22 are identical to paragraphs 31 and 32 of Chavez 1.  As to Count Two of Chavez 2, paragraphs 27 –29 are identical to paragraphs 41 through 43 of Count One of Chavez 1, paragraphs 30 – 34 are identical to paragraphs 33 –37 of Chavez 1, paragraph 35 is virtually identical to paragraph 38 of Chavez 1 with the exception that Chavez 1 had some additional descriptive language in the beginning of the paragraph, and paragraph 36-38 are identical to paragraphs 39-41 of Chavez 1.
[5] Contrary to the assertion of the Plaintiff Chavez in the "Introductory" section contained on page five (5) of her Memorandum of Law, the issue herein is whether to limit evidence of retaliation not whether the Defendant's oral motion for Judgment on the issue of retaliation should be granted on the basis of collateral estoppel since the Defendant MDC **did not make an oral Motion for Judgment**, nor is it seeking at this time judgment as to the entire retaliation claim contained in the Plaintiff Chavez's second complaint entitled Chavez v. The Metropolitan District Commission 3:03CV01112 (MRK)("hereinafter "Chavez 2").
[6] August 9, 2001 is the date that the CHRO action was filed in Chavez 1.

4

On March 21, 2005 the Plaintiff Chavez filed a Memorandum of Law Re Collateral Estoppel And Retaliation Claim with an accompanying affidavit of Daisy Chavez. It appears that the Plaintiff Chavez intends to do precisely what the Defendant MDC feared in filing its Motion in Limine, i.e. relitigate in Chavez 2 claims which she previously raised in Chavez 1 which were insufficient to establish a prima facie case of retaliation. Specifically, first she claims "no one to one correspondence is possible between the two complaints", that the issues in both complaints are not identical, and that Chavez 2 makes factual allegations not seen in the first complaint. See Plaintiff's Memorandum of Law at pp. 2 & 6. Second, she claims that the protected activity which gives rise to her claims of retaliation was her application for a promotion to position of Asst. to the Director Water Treatment & Supply in May 1998. See Plaintiff's Memorandum of Law at p 3; Affidavit of Daisy Chavez hereinafter "Chavez Aff." ¶ 6. Third, she contends that she did not have a full and fair opportunity to litigate the issue of retaliation since (1) her failure to respond to the retaliation aspect of the Motion for Summary Judgment was simply a default and nothing more (See Plaintiff's Memorandum at p. 7); and (2) the Court in its Summary Judgment Ruling failed to treat her deposition statement that she had no idea why the Defendant retaliated against her, in the light most favorable to her and in fact claims that the "Court completely missed what [she] was trying to say." See Plaintiff's Memorandum of Law at p. 8; Chavez Aff. at ¶ 19. Finally, she claims that the Defendant MDC cannot claim prejudice if she is allowed to pursue her claim. See Plaintiff's Memorandum of Law at p. 8.

However, for the reasons set forth below each and every argument raised by the Plaintiff Chavez is without merit and a evidence of retaliatory conduct by the Defendant

MDC should be limited to incidents and conduct which occurred after August 9 2001, the date the Plaintiff Chavez filed her first CHRO complaint.

## II. LEGAL ARGUMENT

### A. THE COURT SHOULD LIMIT THE EVIDENCE OF RETALIATION ON THE BASIS OF COLLATERAL ESTOPPEL AND/OR RES JUDICATA

"Res judicata is a judicial doctrine encompassing two different principles, commonly referred to as claim preclusion and issue preclusion. Claim preclusion is the theory that a prior judgment on a given claim should have the effect of foreclosing all subsequent litigation on that claim 'whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, also known as collateral estoppel, stands for the notion that a prior judgment should foreclose those parties' successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' regardless of whether the issue subsequently arises in the same claim or a different one." Serafin v. State of Connecticut, Department of Mental Health and Additional Services, 2005 U.S. Dist. LEXIS 3606 *19-20 (March 9, 2005) (Citations omitted).

The Plaintiff Chavez claims that collateral estoppel does not apply to limit her claim of retaliation since (1) the issues in the two complaints are not identical, (2) she has not had a full and fair opportunity to litigate the issue of retaliation, and (3) the Defendant MDC would not be prejudiced if the Plaintiff Chavez is allowed to pursue the claim for a determine on the merits, either under the second case or under both cases. See Plaintiff's

Memorandum of Law at pp. 6-8. However, all of these claims by the Plaintiff Chavez are without merit.

1. **The Issues During the Relevant Time Frame Are Identical**

On page two (2) of her Memorandum of Law, the Plaintiff Chavez contends that the two complaints diverge and are distinctly different and that no "one to one correspondence is possible between the two complaints." See Plaintiff's Memorandum of Law at p 2. She further contends on page six (6) that the factual allegations are significantly different, that "in the first Complaint lip service is paid to the word "retaliation" [but] little, if nothing is actually detailed there" and that "the second Complaint…makes factual allegations not seen in the first Complaint and refers to paragraph 33, 34, 35, and 36. See Plaintiff's Memorandum of Law at p. 6.

However, this claim is disingenuous given that the **only** allegations in Counts One and Two of Chavez 2 which are not contained in Chavez 1, are paragraphs 6a, paragraph 18, and paragraphs 24 through 26 relating to the Defendant MDC's Affirmative Action Plan. Contrary to the representations of the Plaintiff Chavez, the remaining allegations are **contained** within the allegations in Chavez 1 including the factual allegations contained in paragraphs 33, 34, 35, and 36 which the Plaintiff Chavez claims are not in Chavez 1.[7] See Chavez 1 and Chavez 2 complaints.

Thus, it is clear the allegations contained in Counts One and Two of Chavez 2 are identical for the most part to the allegations in Chavez 1 which were at

---

[7] Specifically, as to Count One of Chavez 2, paragraph 20 is identical to paragraph 28 of Chavez 1, and paragraphs 21 and 22 are identical to paragraphs 31 and 32 of Chavez 1. As to Count Two of Chavez 2, paragraphs 27 –29 are identical to paragraphs 41 through 43 of Count One of Chavez 1, paragraphs 30 – 34 are identical to paragraphs 33 –37 of Chavez 1, paragraph 35 is virtually identical to paragraph 38 of Chavez 1with the exception that Chavez 1 had some additional descriptive language in the beginning of the paragraph, and paragraph 36-38 are identical to paragraphs 39-41 of Chavez 1.

issue in the Defendant's Motion for Summary Judgment and the Court's partial granting thereof.

    2. **The Plaintiff Chavez Was Given A Full and Fair Opportunity to Litigate The Issue of Retaliation For Incidents And Conduct Occuring Prior to August 9, 2001**.

The claim by the Plaintiff Chavez that she was not given a full and fair opportunity to litigate the issue of retaliation in Chavez 1 is belied by the record evidence. The Plaintiff Chavez filed opposition papers to the Defendant MDC's Motion for Summary Judgment which included her own affidavit. It is beyond comprehension that the Plaintiff Chavez argues that her failure to respond to the issues relating to retaliation was simply a "default and nothing more" and had that had "Plaintiff's counsel known to this issue it would have addressed it." See Plaintiff's Memorandum of Law at p. 7. Presumably the Plaintiff Chavez and her counsel received a copy of the Court's ruling on the Summary Judgment motion and could have asked the Court to reconsider its ruling, However, she did not do so until now when the Defendant MDC has moved to preclude evidence relating to the Plaintiff Chavez's claim of retaliatory conduct during the time frame which was at issue in Chavez 1.

The Plaintiff Chavez also claims that she was not given a full and fair opportunity to litigate the issue of retaliation because the "Court completely missed what [she] was trying to say" when she testified during her deposition that she had no idea why the Defendant retaliated against her, and that it failed to treat this statement in a light most favorable to the her. See Chavez Aff. at 19; Plaintiff's Memorandum at p. 8. However, as set forth above, the Plaintiff Chavez was given an opportunity to respond to the Summary Judgment Motion and did in fact submit an affidavit and other documentary

8

evidence. She did not address the deposition testimony which she claims the Court should have treated differently. If, in fact, she meant something else when testifying during her deposition it is **inconceivable** that she did not state so in the affidavit she filed at that time and/or ask the Court to reconsider its ruling.

3. **The Defendant MDC Will Be Prejudiced If The Motion In Limine Is Denied And the Defendant Is Forced To Litigate Issues Which Have Already Been Decided In Its Favor.**

Finally, it is ludicrous for the Plaintiff Chavez to contend that the Defendant MDC will not be prejudiced if she is allowed to pursue a retaliation claim which includes issues already resolved by the Court in it its favor. The Defendant MDC moved for summary judgment in Chavez 1 and as part of that motion specifically argued that the Plaintiff Chavez had "offered no evidence that any adverse action she suffered was a result of any protected activity." At the time of the filing of the motion, Chavez 1 contained no allegations of **any protected activity** by the Plaintiff Chavez and no allegations relating to her application to the position of Asst. to the Director of Water Treatment and Supply in May 1998 which she now claims is the protected activity upon which her retaliation claims rest.

In fact, her complaint in both matters contradict this contention. In Chavez 1, she alleges that to remove herself from this (i.e. her embarrassment and shame after a meeting in May 25, 1999 with Tony Milano in which he allegedly told her that personnel issues should go through Human Resources) that she "started to apply for Management positions that were posted." See Chavez 1 at ¶¶ 25-28. In Chavez 2, she alleges that to remove herself from "this" (i.e. her transfer to Engineering and Planning on September

9

23, 1998) she "started to apply for Management positions that were posted." See Chavez 2 at ¶¶ 19-20.

In addition, she herself testified during her deposition in Chavez 1 that she did not know why the Defendant retaliated against her. However, she never sought to clarify this statement in her summary judgment opposition papers, nor did she claim in her opposition papers that in fact the protected activity she claims caused the Defendant MDC's retaliatory conduct was her application for the position of Asst. to the Director of Water Treatment & Supply in May 1998. Further, she never sought a reconsideration by the Court and thus the Defendant MDC was entitled to assume that any issue of retaliatory conduct prior to August 9, 2001 had been resolved in its favor and it was for this reason that the Defendant MDC filed the instant Motion in Limine.

Finally, the Defendant MDC did not even learn that the position of Asst. to the Director of Water Treatment & Supply played any role in Chavez 1 and/or Chavez 2 until the Joint Trial Memorandum was prepared in February 2005 and the Plaintiff Chavez included therein exhibits relating to this position. As such, the Defendant MDC was certainly never aware that she was going to make the claim that her application for this position was somehow a "protected activity" which prompted the Defendant MDC's conduct. Thus, contrary to the Plaintiff Chavez's assertions although the Defendant was prepared to meet the Plaintiff Chavez's retaliation claim for conduct arising after August 9, 2001, it could not have been prepared to meet these newest assertions by the Plaintiff

Chavez relating to conduct occurring prior to this date and will undisputably be prejudiced if she is permitted to pursue them.[8]

      B.      **<u>ASSUMING ARGUENDO THAT RES JUDICATA AND COLLATERAL ESTOPPEL ARE NOT APPLICABLE TO PRECLUDE EVIDENCE OF RETALIATORY CONDUCT AND INCIDENTS PRIOR TO AUGUST 9, 2001, THIS COURT SHOULD EXERCISE ITS DISCRETION UNDER THE "LAW OF THE CASE" DOCTRINE</u>**

"As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice **promotes the finality and efficiency of the judicial process by protecting against the agitations of settled issues**…the doctrine applies as much to the decision of a coordinate courts in the same case as to court's own decisions." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 815-816, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988)(citations omitted.) (Emphasis supplied.)

The law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided…" Id. at 817 (quoting Messenger v. Anderson, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912). "A court has the power to revisit prior decision of its own or of a coordinate court in any circumstance, although as a rule court should be loathe to do so in the absence of extraordinary circumstance such as where the initial decision was clearly erroneous and would work a manifest justice." Id. at 831.

---

[8] As set forth below, the Plaintiff's Chavez claim that her application for this position is a "protected activity" is disputed and further this claim as well her claim that her transfer in September of 1998 was retaliatory should be barred under the statute of limitations applicable to Title VII and/or 1981 claims.

11

1. **The Courts Should Follow Its Prior Ruling Since The Plaintiff Chavez Has Not Demonstrated That This Decision Was Clearly Erroneous Or Would Work A Manifest Injustice**

In the instant case, the Court has already ruled that the Plaintiff Chavez had not established a prima facie case of retaliation as to the allegations contained in Chavez 1 (i.e. incidents and conduct prior to August 9, 2001 the date the first CHRO was filed) because she had not shown any evidence of retaliation for engaging in protected activity. The Plaintiff Chavez's Memorandum of Law and Affidavit do not show that this decision was clearly erroneous or that it would work a manifest injustice.

    a. **There Is No Manifest Injustice In Following The Court's Prior Ruling And Limiting Evidence Of Retaliation To Conduct And Incidents Occuring After August 9, 2001.**

For the reasons set forth above, no manifest injustice to the Plaintiff Chavez arises if the Court follows its prior ruling and precludes evidence relating to retaliatory conduct and Incidents Occuring Prior to August 9, 2001.   Specifically, the Plaintiff Chavez had a full and fair opportunity to address the issues raised by the Defendant MDC in its Motion for Summary and in fact she submitted an affidavit in opposition thereto.  Further, although she argues that the "Court missed what she was trying to say" she did not move for reconsideration after receiving a copy of the Court's ruling and it was not until the Defendant MDC filed the instant Motion in Limine seeking to exclude evidence of retaliation that she presented the Court and the Defendant MDC with an affidavit in which she claims **<u>for the first time</u>** that her application for the position of Asst. Director of Water Treatment & Supply in May 1998 was a protected activity and attempts to clarify what she meant during her deposition when she testified that she did not know why the Defendant retaliated against her.

12

Thus, the Plaintiff Chavez had an opportunity to address these issues and was not prevented from doing so, instead, by her own admission she simply defaulted in addressing the issue of retaliation. Under these circumstances there is no manifest injustice which would support revisiting the Court's ruling.

      b. **The Court's Ruling Should Be Followed Since It Was Not Clearly Erroneous.**

To prevail on a claim of retaliation under either Title VII and/or 42 U. S.C. 1981 the Plaintiff must show that: (1) she was engaged in a protected activity, (2) the employer was aware of her participation in the protected activity, (3) the employer took an adverse action against her, and (4) a causal connection existed between the protected activity and the adverse action. See, e.g., Gordon v. New York City Bd. Of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (setting forth the elements necessary to make a prima facie showing of retaliation under Title VII); see also Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988) ("The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII").

      c. **The Plaintiff Chavez Still Cannot Show That She Engaged In Protected Activity Prior to August 9, 2001 And Therefore The Court's Ruling Should Not Be Revisited.**

In its Summary Judgment ruling the Court stated it found "no evidence whatsoever in Ms. Chavez's submissions of retaliation for engaging in protected activity." In order to address this issue, the Plaintiff Chavez now claims that the incident which gave rise to the retaliation was her request as a woman, indeed as a Hispanic woman, to be considered for promotion in 1998. See Plaintiff's Memorandum of Law at p. 3. Specifically, she alleges in paragraph six (6) of her Affidavit that "When the

13

position of Assistant to the Director of Water Supply, a Grade 15 position, was posted in May, 1998, [she …applied] for it, resolving that enough was enough and [she] would no longer allow the MDC to keep the glass ceiling in place…" See Chavez Aff. at 6.

However, applying for a position does not fall within the purview of a protected activity since the term protected activity refers to "action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc. 202 F. 3d 560, 566 (2d Cir. 2000); See Brands-Kousaros v. Banco Di Napoli, S.p.A., 1997 U.S. Dist. 20345, No. 97 Civ. 1673, 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997) (noting that the "protected activity must involve some sort of complaint about a type of discrimination that Title VII forbids).

The Plaintiff Chavez's affidavit reflects she applied for a promotion in May 1998 and that she did so because she was frustrated with the glass ceiling and had decided that enough was enough. See Chavez Aff. at ¶¶ 5-6. However, even though she claims that this was the reason that she filed the application, she does not claim, nor is there any evidence that the Defendant MDC knew that this was the reason her application was filed and, in fact, there is nothing in her application which reasonably could have lead the Defendant MDC to understand that the application was being filed to protest and/or oppose discrimination. See Chavez application for Asst. Manager of Water Treatment & Supply attached hereto as Exhibit A; see also Marilyn Galdieri-Ambrosini v. National Realty & Development Corp, 136 F. 3d 276(2nd Cir. 1998)(Court held that there was nothing in the nature of a female employee's complaints regarding work her boss asked to do and in which she never mentioned her gender, that could reasonably have lead her employer to understand that gender discrimination was the nature of her objection and

14

hence no evidence to support a finding that she was discharged in retaliation for opposing Title VII prohibited discrimination).

Thus, based upon the above it is clear that by filing this application she was not engaging in a protected activity and certainly cannot establish that the Defendant MDC knew and/or could possible have understood that in filing for the promotion she was actually opposing and/or protesting illegal discrimination.

Finally, even assuming that the filing of the application constituted a protected activity, she has not established by means of specific facts that there exists a causal connection between the protected activity and the retaliatory conduct. She testified during her deposition that she had no idea why the Defendant MDC would retaliate against her. Now she claims that although she knows that the Defendant MDC retaliated against her that "what she does not know…when it comes to bigots, is "why they do what they do." See Chavez Aff. at ¶ 19. However, these statements are wholly unsupported by any facts and should not have made a difference to the Court's ruling in any event since "a part may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F. 2d 9, 12 (2d Cir. 1986) cert. Denied 480 U.S. 932 (1987). In addition, "merely conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot create a genuine issue of material facts where none would otherwise exist." Quinn v. Syracuse Model Neighborhood Corp., 613 F. 2d 438, 445 (2d . Cir. 1980).

Thus, even with the information contained in the Plaintiff Chavez's Affidavit she still cannot establish a prima facie case of retaliation for incidents and conduct alleged in Chavez 1.

### C. **ASSUMING ARGUENDO THAT THE EVIDENCE SHE PRESENTS MIGHT OTHERWISE ESTABLISH A PRIMA FACIE CASE OF RETALIATION ALLOWING THE EVIDENCE TO BE HEARD IN CHAVEZ 2, THE STATUTE OF LIMITATIONS SHOULD STILL PRECLUDE USE OF SUCH EVIDENCE AT TRIAL.**

Finally, assuming arguendo that the Plaintiff Chavez has demonstrated a prima facie case of retaliation relating to claims she raised in Chavez 1, much of the conduct upon which she relies is barred by the three year statute of limitations under Title VII and/or the four year statute of limitations which she claims exists under 42 U.S. C. 1981. Specifically, Chavez 2 was filed on or about June 9, 2003 and thus any claims needed to be raised by either June 9, 2000 and/or by May 9, 1999. Her claims that she engaged in protected activity by filing for a promotion in May of 1998 is well beyond this time frame as is her claim that the transfer on September 23, 1998 constituted retaliation. Thus, both such claims may be precluded in Chavez 2 on this additional basis as well.

### III. CONCLUSION

For the reasons set forth herein, as well as those set forth in the Defendant MDC's Motion in Limine dated February 10, 2005, the Defendant MDC respectfully requests that the Court grant its Motion in Limine and preclude the Plaintiff Daisy Chavez from producing evidence of retaliatory conduct and incidents occurring prior to August 9, 2001. In the alternative, at a minimum on the basis of the statute of limitations applicable to Title VII and Section 1981 claims, the Plaintiff Chavez should be precluded from producing evidence that she engaged in a protected activity in May 1998 by filing an

application for promotion and subsequently was transferred to the Engineering and

Planning Department in September of 1998 in retaliation therefore.

>
> The Defendant,
> THE METROPOLITAN
> DISTRICT COMMISSION
>
>
> BY_____
>   David A. Ryan, Jr. (ct. 05064)
>   Holly Quackenbush Darin (ct.10183)
>   Ryan & Ryan, LLC
>   900 Chapel Street, Suite 621
>   New Haven, CT  06510
>   203-752-9794
>   -Its Attorneys-

## CERTIFICATION

The undersigned hereby certified that the foregoing was mailed, first class, postage prepaid, this 28th day of March 2005 to all counsel and pro se parties of record as listed below:

Francis A. Miniter
Miniter and Associates
100 Wells Street, Suite 1D
Hartford, CT  06103

>
> _____
> David A. Ryan, Jr.

17