UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAISY CHAVEZ, | : CIVIL ACTION |
| Plaintiff | : 3:02CV458 (MRK) |
| V. | : |
| METROPOLITAN DISTRICT COMMISSION, | : |
| Defendant | : APRIL 4, 2005 |

## DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW RE: OBLIGATION OF MDC TO HAVE AFFIRMATIVE ACTION PLAN

### I.   FACTUAL AND PROCEDURAL BACKGROUND

At the Final Pretrial Conference held on February 24, 2005 on the above matter, the Defendant Metropolitan District Commission ("Defendant MDC") brought to the Court's attention its objection to the Plaintiff Daisy Chavez's ("Plaintiff Chavez") Exhibit 61a, Exhibit 61b and Exhibit 61c which appeared to be applications from the Connecticut Department of Environmental Protection to the Federal government under the Clean Water Act and had no relevance to the issues in this matter.

During the colloquy which followed between the parties and the Court, it was the Defendant MDC's understanding that the documents were being offered to somehow show that the Defendant MDC had received federal funds and thus, under federal law, the Defendant MDC was required to have an affirmative action plan during the period 1997

through 2002.[1]

At the conclusion of the discussion over the admissibility of Exhibit 61a,[2] the Court ordered the Plaintiff Chavez to brief the issue of whether or not the Defendant MDC was required to have an Affirmative Action Plan and the Defendant MDC understood that the Plaintiff Chavez was to do so using her proposed exhibit Exhibit 61a. In addition, it was also the Defendant MDC's understanding that the Plaintiff Chavez was to brief the relevance of MDC's lack of an affirmative action plan to the issues raised in her complaint.

However, the Plaintiff Chavez's Memorandum of Law filed with the Court on March 28, 2003 not only fails to demonstrate that Exhibit 61a obligates the Defendant MDC to have an affirmative action plan, but also fails to show the relevance that the Defendant MDC's lack of an affirmative action plan has to the issues in this case.

II. **LEGAL ARGUMENT**

    A. **FEDERAL REQUIREMENT FOR AFFIRMATIVE ACTION PLANS**

The Plaintiff Chavez relies upon Title VII of the 1964 Civil Rights Act as the alleged source of the Defendant's MDC's obligation to maintain an affirmative action plan. However, she cites no caselaw for this proposition, and in fact, neither "Title VII, 42 U.S.C. § 1983, nor the Fourteenth Amendment require an employer to institute an

---

[1] However, contrary to the assertion of the Plaintiff Chavez in her brief dated March 19, 2005, counsel for the Defendant MDC at no time stipulated that the Defendant MDC "had received federal funds which were first paid from the United States government to the State of Connecticut for distribution to the MDC." See Plaintiff's Memorandum of Law at p. 1. Any comments made were in reference to the fact that Exhibit 61a is an application by the State of Connecticut Department of Environmental Protection ("DEP") not by MDC and such comments did not amount to a stipulation.

[2] It was Defendant MDC's understanding that Plaintiff's counsel had withdrawn Exhibits 61b and 61c and therefore should not be permitted to use Exhibit 61b in support of her Memorandum of Law.

2

affirmative-action program." Craik v. Minn. State Univ. Bd., 731 F.2d 465, 472 (8th Cir., 1984) (Emphasis added.)

The Plaintiff Chavez's reliance upon 42 U.S.C. § 2000e-17 is misplaced because that section does not purport to specify whether and under what circumstances an employer must have an affirmative action plan. It merely prohibits the denial or suspension of government contracts in circumstances where an employer has an affirmative action plan in place. Indeed, the Plaintiff Chavez's assertion that said section shows the intent to impose affirmative action plans on all employers as defined by 42 U.S.C.§ 2000e(b), contracting with the U.S. Government flies in the face Executive Order 11246, as amended, which **does** govern the circumstances under which certain employers are required to maintain written affirmative action plans.

Specifically, Executive Order 11246, as amended essentially prohibits Government contractors with contracts in excess of $10,000.00 from discriminating and requires affirmative action to ensure equal employment opportunity without regard to race, color, sex, religion and/or national origin. See Executive Order, Section 202; 41 C.F.R. 1.5. [3]

Thus, it is Executive Order 11246 and not Title VII which should govern whether or not the Defendant MDC is required to maintain an written affirmative action plan.[4]

Executive Order 11246, as amended, provides different affirmative action mandates for construction contractors vs. non-construction contractors. The Plaintiff

---

[3] Executive Order 11246, as amended only applies to contractors and subcontractors who hold federal or federally-assisted contracts in excess of $10,000.00. See 41 C.F.R. 1.5. Thus, the Plaintiff Chavez's Title VII argument that any employer who has fifteen or more employees and contracts with the U.S. Government must have an affirmative action plan, regardless of the amount of the contract, clearly contradicts this provision of Executive Order 11246, as amended.

[4] In fact, the Plaintiff Chavez's complaint in Chavez 2 references violations of Executive Order 11246. See Complaint dated June 9, 2003 at ¶ 25.

3

Chavez is relying upon Title VII as the source of MDC's obligation to maintain an affirmative action plan, however, she does not state which category she contends the Defendant MDC falls under.[5] However, neither category would require the Defendant MDC to maintain a written affirmative action plan.

First, under Executive Order 11246 construction contractors are not required to maintain a written affirmative action plan. See 41 C.F.R. 60-4.1 through 41 C.F.R. 60-4.4 Thus, even assuming that the Plaintiff Chavez could show that the Defendant MDC is a "construction contractor", as a "construction contractor" it is not required to maintain a plan.

Second, under the regulations established under Executive Order 11246, a nonconstruction (supply and service) contractor,[6] is required to develop and maintain a written affirmative action program **only if** it has 50 or more employees and has a contract of $50,000 or more....See 40 C.F.R. 60-2.1.

Thus, the Defendant MDC was only obligated to develop and maintain an affirmative action plan during the requisite years if: (1) it received $10,000.00 or more in federal contracts (See 41 C.F.R. 1.5); and (2) it was a nonconstruction contractor and had 50 or more employees and a contract of $50,000 or more. See 41. C.F.R. 6-2.1.

The Plaintiff Chavez has failed to show by virtue of Exhibit 61a or otherwise that (1) the Defendant MDC had a contract for $10,000.00 with the federal government such that its conduct is governed by the provisions of Executive Order 11246; (2) that the

---

[5] As set forth above, under her argument the mere fact that the Defendant MDC is an "employer" under Title VII is sufficient.

[6] A construction contractor is defined as a prime contractor (i.e. person holding a contract) or subcontractor who hold a contract for "the construction, rehabilitation, alteration, conversation, extension, demolition or repair of buildings, highways, or other changes or improvements to real property, including facility providing utility services..." See 41. C.F.R. 1.3. A "nonconstruction contractor" is not specifically defined in 41. C.F.R. 1.3, but in appears from 41 C.F.R. 60-2.1 that such contractors are "supply and service" constractors. See 31 C.F.R. 60-2.1.

4

Defendant MDC was a nonconstruction contractor during the requisite years;[7] or (3) or that assuming the Defendant MDC was a nonconstruction contractor during 1997 through 2002, it had contracts for $50,000 or more.[8]

Although the Plaintiff Chavez asserts that the Defendant repeatedly applied for funds for <u>various projects</u>, Exhibit 61a does not support this fact and certainly does not support her claim that the Defendant MDC was legally obligated to maintain an affirmative action plan during this period of time. Specifically, Exhibit 61a is not an application by the Defendant MDC, but rather is a series of documents which includes a Notice Of Intent To Apply for Federal Assistance and an Application for Federal Assistance dated 12/3/97 by the Connecticut Department of Environmental Protection Bureau of Water Management ("DEP"). <u>See</u> Plaintiff Chavez's Proposed Exhibit 61a attached hereto as Exhibit A. Further, Exhibit 61a which was allegedly filed by the DEP, does not show that Defendant MDC was a nonconstruction contractor during 1997 through 2002 and does not show the Defendant MDC received <u>any</u> federal funds during this time period much less entered into a contract for the requisite amount of $50,000.00.

Thus, it is clear that under Executive Order 11246 the Plaintiff Chavez has not shown through Exhibit 61a that the Defendant MDC is <u>required</u> to maintain an affirmative action plan.

---

[7] As set forth above, since construction contractors are not required to maintain a written affirmative action plan, the Plaintiff Chavez must show that the Defendant MDC is a nonconstruction contractor in order for it to be obligated to maintain a written affirmative action plan.

[8] In fact, as the Plaintiff Chavez is well aware, Rick Gomez, the Defendant's Affirmative Action Officer testified during the course of a deposition taken by Plaintiff Chavez's former counsel that the Defendant MDC did not receive $50,000.00 in federal funds and was not obligated to maintain an affirmative action plan. <u>See</u> Deposition of Rick Gomez excerpts attached hereto as Exhibit B, at pp. 11-12.

## B. EXHIBIT 61a IS NOT ADMISSIBLE AND THE PLAINTIFF HAS NOT PRODUCED ANY OTHER ADMISSIBLE EVIDENCE TO ESTABLISH THE REQUIREMENTS OF EXECUTIVE ORDER 11246.

1. <u>Exhibit 61a Is Inadmissible</u>

To the extent that the Plaintiff Chavez attempts to use Exhibit 61a as a basis for establishing that the Defendant MDC was obligated to maintain an Affirmative Action Plan, the Defendant objects to Exhibit 61a on the basis that (1) no witness has been identified to authenticate the exhibit; (2) it is hearsay; (3) it is irrelevant; and (4) any probative value is outweighed by its prejudicial value.

As set forth above, Exhibit 61a contains a variety of documents including an unsigned Notification to Apply for Federal Assistance and an application by the State of Connecticut Department of Environmental Protection ("DEP") for federal assistance. The application is signed by Jane Stahl, Assistant Commissioner of the Department of Environmental Protection ("DEP"). <u>See</u> Exhibit 61a at p. 3. However, neither Jane Stahl, and/or anyone from the DEP has been identified as a witness who can identify and authenticate the document.

Secondly, Exhibit 61a is irrelevant to the issues in this case. Under Fed. R. Evid 402, "Evidence which is not relevant is not admissible." Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the termination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Exhibit 61a has no bearing on the Plaintiff Chavez's claims herein. Although she claims that the document shows that the Defendant MDC was a government contractor

within the meaning of 42 U.S.C. 2000e-17 because it shows that the Defendant MDC sought and received federal funding, as set forth above her reliance upon 42 U.S.C. §2000e-17 is misplaced. In addition, even assuming she can properly rely upon that section, as previously indicated, Exhibit 61a does not show that the Defendant MDC applied for or even received federal funding. Rather, it is simply an application prepared **by the State of Connecticut DEP** which is not a party in this matter.

Further, with respect to the requirements of Executive Order 11246, Exhibit 61a does not show that during the requisite years the Defendant MDC <u>received</u> any federal funding and/or contracts or that it had a contract of $50,000.00 or more. Thus, the document is irrelevant to show that the requisites of Executive Order 11246 have been met and, since it has absolutely no bearing to any of the Plaintiff Chavez's other claims in this action, it is inadmissible.

Third, Exhibit 61a which was prepared by a third party, the State of Connecticut DEP, is hearsay under Fed. R. Evid. 801(c) and thus is inadmissible if it is being offered to show that MDC applied for and received federal funds in the amounts reflected therein.

Fourth, *assuming arguendo* that the document is otherwise admissible, its probative value is clearly outweighed by its prejudicial value and should be excluded under Fed. R. Evid. 403. As stated previously, in the event the document is allowed as an exhibit, the jury could be misled into believing that the Defendant MDC actually applied for and received the amounts reflected therein. Thus, the Defendant MDC would need to respond to the specific funding requests as referenced therein. This would be compounded by the fact that the Defendant MDC did not write the document, did not

7

calculate and/or compile the figures referenced, and the Plaintiff Chavez has not identified as witnesses any individual from the DEP or otherwise who could explain the application and its contents.

Thus, it is the Defendant MDC's position that Exhibit 61a is not admissible to establish that the Defendant MDC received the requisite funding under Executive Order 11246.

2. <u>Statements of Counsel Are Not Evidence</u>

Finally, to the extent that the Plaintiff Chavez is relying upon an alleged "stipulation" by Defendant MDC's counsel to support her claim that MDC applied for and received federal funding, as stated previously no stipulation was ever entered into. In addition, any statements by counsel regarding the fact that this is an application by the State of Connecticut are not evidence and should not be admissible on the issue of whether the Defendant MDC is obligated to maintain an affirmative action plan. See <u>Jamaica Ash & Rubbish Removal Co. v. Ferguson</u>, 85 F. Supp. 2d 174, 182 (D.N.Y., 2000) (Attorney's statement or argument is not evidence).

### C. THE PLAINTIFF CHAVEZ HAS FAILED TO DEMONSTRATE HOW THE DEFENDANT'S LACK OF AN AFFIRMATIVE ACTION PLAN IS RELEVANT

*Assuming arguendo* that the Plaintiff Chavez can show that the Defendant MDC was required to have an affirmative action, the Plaintiff Chavez has not shown the relevance that the Defendant MDC's lack of a written affirmative action plan has to the specific claims at issue in this lawsuit. Instead, she relies upon <u>Williams v. Consol. City of Jacksonville</u>, 381 F. 3d 1298, 1299 (11th Cir. En banc 2004) for the proposition that the absence of an affirmative action plan can be interpreted as a violation of 14th

8

Amendment guarantees. However, <u>Williams</u> is not only distinguishable, but contrary to the Plaintiff Chavez's assertions, it does not stand for the proposition that the absence of an affirmative action plan is a violation of 14th Amendment guarantees.

In <u>Williams v. Consolidated City of Jacksonville</u>, 341 F. 3d 1261 (11th Cir. 2003) the Defendant's Fire Chief, an African American male, had been appointed to ensure that the department would be run in a race-neutral manner. In 1999, he was approached by the chief of the rescue division and asked to <u>create</u> four new captain positions which would have been filled from the eligibility list generated in 1997. The Chief declined to create the positions. At the time, the Defendant had no affirmative action plan and there was evidence that this decision was made because the Chief wanted to wait for a new list to be generated so that he would have a more diversified applicant pool since he had already promoted eight white men and the next four candidates to be promoted would have been the plaintiffs, who were four white men. The plaintiffs thereafter filed suit alleging that "in the absence of a valid affirmative action plan, this decision not to create the roving captain position amounted to unlawful discrimination in employment." <u>Id</u>. at 1265-1266.

The Court held that in proving an equal protection violation a plaintiff must show a purpose or intent to discriminate and found that the Chief's action essentially amounted to an intentional race and gender based employment decision. Thus, the Court held that this decision not to create a new position based solely on race and gender of the next eligible candidates, in the absence of an affirmative action plan violated the Equal Protection Clause. <u>Id</u>. at 1269.[9]

---

[9]The United States Court of Appeals for the Eleventh Circuit denied the Petition for Rehearing En Banc but Circuit Judge Wilson wrote a concurring opinion from which the Plaintiff Chavez now cites agreeing with

9

However, the Court after reaching this holding noted that the fire department had a history of discrimination against minorities and women and its reference to the absence of an affirmative action plan appears to be no more than an acknowledgment that the Supreme Court has recognized remedial use of affirmative action plans to remedy past discrimination, and that if the actions taken by the Fire Chief had been taken pursuant to an affirmative action plan designed to remedy past discrimination, such actions might have provided the Defendant therein with a justification for its actions. See Wygant v. Jackson Bd. of Education, 476 U.S. 267, 286 (1986) ('Remedying past discrimination by a state actor is a sufficiently weighty state interest to warrant the remedial use of a carefully constructed affirmative action program').

Thus, the Plaintiff Chavez cannot rely upon Williams for the proposition that the Defendant MDC's lack of an affirmative action plan in and of itself is a violation of the Equal Protection Clause.

Further, other than her reliance upon Williams, the Plaintiff Chavez has not shown in any other manner that the lack of a written affirmative action plan by the Defendant MDC during the period 1997 through 2002 makes the existence of her claims any more or less probable under Fed. R. Evid. 401. The position which the Plaintiff Chavez claims are at issue in this suit are Asst. Manager of Water Treatment & Supply, Manager of the Treasury, Manager of Utility Services, Manager of Environmental Health & Safety, Assistant Manager of Operations and Manager of Operations. Each of these positions was posted and the Plaintiff Chavez applied for them and most of them she was

---

the holding that "a decision not to create new job, based solely on race and gender of the next eligible applications, in the absence of an affirmative action plan, violates the Equal Protection Clause." Williams v. Consol. City of Jacksonville, 381 F. 3d 1298, 1299 (11th Cir. En banc 2004).

interviewed for. <u>See</u> Exhibits attached to Joint Trial Memorandum. Thus, unlike <u>Williams</u> there was no decision to exclude her from applying and interviewing for these positions. The only decisions made by the Defendant MDC were the decision to hire someone other than the Plaintiff Chavez and such decision was based upon qualifications and not the Plaintiff's protected class. To the extent that the Defendant MDC did not have an affirmative action plan during the period of time that these decisions occurred, "[the law] does not require the employer to restructure his employment practices to maximize the number of minorities and women… but allows the employer discretion to chose amount qualified candidates provided that the decision is not based upon unlawful criteria." <u>Reed v. State of Connecticut, Dept. of Transportation</u>, 161 F. Supp. 2d 73, 82 (D. Conn. 2001) (Citations omitted.)

### III.  CONCLUSION

In conclusion, the Plaintiff Daisy Chavez has not shown either through Exhibit 61a and/or otherwise that the Defendant MDC was required to maintain an affirmative action plan during 1997 through 2002. Exhibit 61a does not establish that the MDC received federal funding and in fact is inadmissible. In addition, the Plaintiff cannot rely upon alleged comments of counsel as either "stipulations" and/or evidence which would support her claim that MDC received federal funding. Lastly, assuming arguendo that Exhibit 61a is admissible and can be used to show that the Defendant MDC was required to maintain an affirmative action plan, the Defendant has not shown the relevance the Defendant MDC's lack of an affirmative action plan has to the issues in this litigation.

THE DEFENDANT
METROPOLITAN DISTRICT
COMMISSION

By: _____
David A. Ryan, Jr. (ct05064)
Ryan & Ryan, LLC
900 Chapel Street, Suite 621
New Haven, CT 06510
(203) 752-9794
david.ryan@ryan-ryan.net
Its Attorneys

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid this 4th day of April 2005 to the following counsel of record:

Francis A. Miniter
Miniter & Associates
100 Wells Street, Suite 1D
Hartford, Connecticut 06103

_____
David A. Ryan, Jr.

12