UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAISY CHAVEZ, | : |
| | : |
| Plaintiff, | : |
| | : No. 3:02CV458 (MRK) |
| v. | : |
| | : |
| METROPOLITAN DISTRICT COMMISSION, | : |
| | : |
| Defendant. | : |

## RULING AND ORDER

In this lawsuit, Daisy Chavez sues her employer the Metropolitan District Commission ("MDC") for employment discrimination. The relevant facts and circumstances of this case are familiar to the parties, and therefore the Court declines to repeat them here. In the Joint Trial Memorandum [**doc. #73**], the MDC objected to the admission of Plaintiff's proposed exhibit number 61a, an application from the Connecticut Department of Environmental Protection for federal funds ("CDEP application") on the basis of relevance. At the Final Pretrial Conference, Ms. Chavez's attorney explained that the purpose of the exhibit was to demonstrate that the MDC received federal funds between 1997 and 2002, yet had no affirmative action plan in place during that time in violation of federal law. The MDC denied that it was under any obligation to maintain an affirmative action plan or that exhibit 61a showed otherwise. The Court reserved ruling on the MDC's objection at the Final Pretrial Conference, and gave the parties an opportunity to brief the issue. Having considered the briefs submitted by the parties,[1] the Court

---

[1] The parties submitted the following briefs: Plaintiff's Memorandum of Law Re: Obligation of MDC to Have Affirmative Action Plan [doc. #99] ("Pl.'s Mem."); and Defendant's Reply to Plaintiff's Memorandum of Law Re: Obligation of MDC to Have Affirmative Action

sustains the MDC's objection because the CDEP application is irrelevant to any claim in this lawsuit.

Ms. Chavez claims that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 ("Title VII"), obligates the MDC to maintain an affirmative action plan because the MDC receives government contracts. Ms. Chavez is mistaken. Neither "Title VII, 42 U.S.C. § 1983, nor the Fourteenth Amendment require an employer to institute an affirmative action program." *Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 472 (8th Cir. 1984). Indeed, the language from 42 U.S.C. § 2000e-17 that Ms. Chavez relies on states only that "[n]o Government contract, or portion thereof, with any employer, shall be denied, withheld, terminated, or suspended . . . where such employer has an affirmative action plan which has previously been accepted by the Government . . . without first according such employer full hearing and adjudication." This provision creates no affirmative obligations; rather, it simply affords greater protection to employers that maintain affirmative action plans.

As the MDC rightly points out, the source of the requirement that certain government contractors maintain an affirmative action plan is not Title VII but Executive Order 11246. That "Order mandates rules to promote equal opportunity for all persons, without regard to race, color, religion, sex, or national origin, employed or seeking employment with Government contractors or with contractors performing under federally assisted construction contracts." *Morris v. Amal. Lithographers of Am.*, 994 F. Supp. 161, 171-72 (S.D.N.Y. 1998). Ms. Chavez has not even referenced Executive Order 11246 in her briefs or arguments, much less demonstrated that the MDC was bound by its terms. *See*, *e.g.*, 41 C.F.R. § 60-4.1 (affirmative action plan requirement

---

Plan [doc. #101] ("Def.'s Mem.").

applies only to non-construction contractors with more than 50 employees and contracts of at least $50,000). Indeed, the CDEP application that Ms. Chavez seeks to offer into evidence at trial is simply request by the Connecticut Department of Environmental Protection for federal funds; the application itself does not establish that any federal funds were ever actually received by the MDC. *Cf.* Gomez Aff., Ex. B attached to Def.'s Mem., at 11-12 (Rick Gomez, the MDC's Affirmative Action Officer testified that the MDC did not receive $50,000 in federal funds).

Therefore, the Court concludes that Ms. Chavez has failed to show that the MDC was required by federal law to maintain an affirmative action plan. And since, the CDEP application itself does not establish or even suggest that the MDC was required by federal law to maintain an affirmative action plan – the only reason proffered for offering that exhibit – the exhibit is not "relevant evidence" within the meaning of the *Federal Rules of Evidence*. Fed. R. Evid. 401 ("Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Ms. Chavez is correct that the failure to maintain an affirmative action plan can be evidence of discrimination. *See Williams v. Consol. City of Jacksonville*, 341 F.3d. 1261, 1269 (11th Cir. 2003). The Court notes that MDC has already stipulated that it did not have in place any affirmative action plan between 1997-2002. As a consequence, Ms. Chavez will be able to present this far more relevant evidence to the jury in support of her claims. However, the CDEP application, a document that does not even reference affirmative action or the MDC, has no bearing on any issue in this case. Finally, and in any event, even if the CDEP application were relevant evidence, the Court would exclude it under Rule 403 of the *Federal Rules of Evidence*,

3

because the likelihood of confusion and prejudice associated with admitting the CDEP application far outweighs whatever probative value it might have.

For these reasons, the Court sustains the MDC's objection to the CDEP application, Ms. Chavez's proposed exhibit number 61a, and rules that it is inadmissible as evidence at trial. In addition, Ms. Chavez will not be permitted to inform the jury or argue that the MDC violated any federal law by failing to have an affirmative action plan between 1997-2002.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut on April 26, 2005.**