**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAISY CHAVEZ, | : | DOCKET NO. 3:02CV458 (MRK) |
|     Plaintiff | : | |
| | : | |
|   v. | : | |
| | : | |
| THE METROPOLITAN DISTRICT | : | |
| COMMISSION, | : | |
|     Defendant | : | JUNE 2, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR JUDGMENT AS A MATTER OF LAW**

**I.  INTRODUCTION**

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, the Defendant Metropolitan District Commission ("MDC" or "the Defendant"), moves for judgment as a matter of law in favor of the Defendant on all counts of Plaintiff's Complaint.

**II.  DISCUSSION**

    **A.  STANDARD FOR MOTION FOR JUDGMENT**

Rule 50(a) of the Federal Rules of Civil Procedure provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issues against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

"Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 289 (2d Cir. 1998). Upon the conclusion of the

Plaintiff's case in this matter, the evidence is still insufficient for the jury to find in favor of her on any of her claims.

**B.     ARGUMENT**

**1. THE PLAINTIFF HAS FAILED TO DEMONSTRATE THAT A HOSTILE WORK ENVIRONMENT ON THE BASIS OF HER RACE, GENDER OR NATIONAL ORIGIN EXISTED AT THE MDC IN VIOLATION OF TITLE VII**

To establish a hostile work environment under Title VII, a plaintiff must establish that: (1) she was subjected to a hostile work environment; (2) there is a specific basis for attributing the conduct that created the hostile environment to her employer; (3) her race, gender, and/or national origin was a substantial or motivating factor in the employer's conduct; (4) the employer's action proximately caused any injuries sustained by the plaintiff. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

a. **The Plaintiff was not subjected to a hostile work environment**

To prevail on a hostile work environment claim, a plaintiff must produce evidence that "the workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Cruz v. Coach Stores, 202 F.3d 560, 570 (2d Cir. 2000) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)(internal citations omitted)). Courts examining hostile work environment claims look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. As a result, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001).

The standard for a hostile work environment claim is a demanding one. A plaintiff must demonstrate that a series of incidents allegedly creating a hostile work environment were "sufficiently continuous and concerted" to alter the conditions of his or her working environment. See Cruz, 202 F.3d at 570 (citations omitted). "Isolated instances of harassment ordinarily do not rise to this level." Id.

The Plaintiff claims that she has continuously been subject to a hostile work environment since being placed on temporary assignment in the Engineering and Planning Department in 1998. She claims that MDC provided her with old furniture and assigned her demeaning clerical tasks. However, she herself testified in cross examination that, at the time of the assignment, she wanted to transfer out of the Customer Service Department where she was working. Mr. Alvarado, her Supervisor and a Hispanic male, also testified that she was placed on special assignment temporarily while the MDC looked for a replacement to fill the Administrator of Real Estate position which had become vacant due to a retirement. He testified that she was neither an engineer nor a member of the Union and thus, under those constraints, he delegated other tasks to her. These tasks, however, were not menial. She was responsible for paying real estate taxes of $800,000 or more on MDC's properties in various towns. In addition, she oversaw contracts with non-member municipalities. Further, during the period of time she was on special assignment, she dealt with encroachment issues and attended and represented the MDC at public meetings of local zoning boards and commissions.

Moreover, the evidence, including the Plaintiff's own resume, reflected that once the temporary assignment ended and she became Special Services Administrator she was

put in charge of some very considerable tasks. She did not deny that the duties were important tasks and proudly referred to the fact that she was put in charge of the "high level" GASPI project. The Plaintiff, therefore, cannot establish that a hostile work environment existed based upon the tasks that she has been assigned.

The Plaintiff also claims that she was subjected to a hostile work environment based upon discriminatory comments. She alleges, however, only a few isolated comments. Mr. Amaio testified that, in 1998, Steve Pierce asked him, "Are you ready to work for a woman?" Bob Larosa testified that that sometime in the period of 1995-1997 Trudy Mero, an African-American Commissioner, stated that "Cuban Americans are not minorities." There was also testimony that Mark Hanson, the Assistant Manager of Utilities Services at the time, stated that, "He would never work for the Plaintiff and that if she got the position of Manager he would quit and that others would go with him." He also said that, "He would never work for a woman." These three comments do not, as a matter of law, permeate the workplace with discriminatory intimidation or ridicule to constitute a hostile work environment. Accordingly, the Plaintiff has failed to demonstrate a hostile work environment existed at MDC.

   **b. The Plaintiff did not establish that race, gender or national origin was a motivating factor in the creation of the hostile work environment**

Should the Court determine that the Plaintiff has demonstrated that a hostile work environment existed, she still cannot establish that the environment existed in violation of Title VII. As set forth above, to establish a hostile work environment claim under Title VII, the Plaintiff must demonstrate that her protected class status was a motivating factor in the creation of this hostile work environment. "Plaintiff's membership in a protected

4

class does not, in and of itself, establish an inference of discrimination following an adverse employment decision unless the latter is predicated on consideration of the former." Croom v. Western Conn. State Univ., No. 3:00cv1805, 2002 U.S. Dist. LEXIS 27361, at *11 (D. Conn. December 12, 2002).

The Plaintiff has proffered no evidence to demonstrate that any action taken against her occurred under circumstances supporting an inference of discrimination. She presented evidence of three isolated comments. The first comment was made in 1998 and not directly to the Plaintiff. She did not hear the comment and certainly did not present evidence that the comment intimidated her. The second comment, by Ms. Mero, cannot be interpreted as a derogatory comment. The final comment does not focus on any aspect of the protected class status of the Plaintiff. It merely demonstrates that a single individual at MDC did not want to work for the Plaintiff and that he felt others would leave employment if she were promoted.

Even the Plaintiff's temporary assignment cannot be causally connected to discriminatory intent. The Plaintiff was sent to work for a manager, Luis Alvarado, who was a Hispanic male. When Mr. Alvarado retired, the Plaintiff's supervisor became Lebert Thomas, an African-American male. She presented no evidence that she was mistreated for being female. There is not even an inference from the evidence that the Plaintiff's race, national origin or gender was a motivating factor in any hostile work environment that allegedly had been created at MDC.

Accordingly, MDC is entitled to judgment as a matter of law on the Plaintiff's claim that she was subjected to a hostile work environment in violation of Title VII.

## 2. THE PLAINTIFF HAS FAILED TO DEMONSTRATE THAT A HOSTILE WORK ENVIRONMENT EXISTED AT MDC IN VIOLATION OF SECTION 1983

The standards set forth above under Title VII apply to a hostile work environment under Section 1983. For the reasons set forth above, the Plaintiff has failed to establish a hostile work environment at MDC. In addition, to hold the employer liable under 1983, the plaintiff must establish that the hostile work environment claim arose from an official policy or custom. Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir. 2000).

"Municipalities and other local government bodies, including school districts, are considered 'persons' within the meaning of Section 1983. . . . But a municipality cannot be held liable pursuant to Section 1983 solely because of the discriminatory actions of one of its employees. See Monell v. Dep't of Soc. Services, 436 U.S. 658, 689 (1978). The municipality can therefore only be held liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694.

The Plaintiff has not alleged that there was any municipal policy or custom to create a hostile work environment at MDC. She claims merely that three individuals made comments that she asserts were derogatory. As discussed above, the comments were isolated and not sufficient to create a hostile work environment. Such generalized assertions are insufficient to create an issue for the jury to avoid judgment as a matter of law. Dept. of Commerce v. U.S. House of Representatives, 525 U.S. 316, 334 (1999).

Accordingly, MDC is entitled to judgment as a matter of law on the Plaintiff's claim that she was subjected to a hostile work environment in violation of Section 1983.

### 3. THE PLAINTIFF HAS FAILED TO DEMONSTRATE THAT A HOSTILE WORK ENVIRONMENT EXISTED ON THE BASIS OF HER RACE AT THE MDC IN VIOLATION OF SECTION 1981

The Supreme Court held that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claims is pressed against a state actor." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989). To the extent that relief remains available to her under Section 1981, it would simply duplicate the relief that she could receive under Section 1983. Accordingly, MDC incorporates its argument that the Plaintiff failed to establish a hostile work environment under Section 1983 to support its argument that MDC is entitled to judgment as a matter of law under Section 1981. In addition, a claim under Section 1981 is limited only to situations where racial animus is a motivating factor. Race or national origin was only mentioned in a single, harmless comment. The Plaintiff failed to present evidence that race was an issue. Therefore, *a fortiori*, MDC is entitled to judgment as a matter of law under the Plaintiff's hostile work environment claim under 1981.

### 4. THE PLAINTIFF HAS FAILED TO PROVE HER FAILURE TO PROMOTE CLAIM ON THE BASIS OF HER RACE, GENDER AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII

To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants'; (3) she was rejected for the position; and (4) the position remained open and employer continued to seek applicants having the plaintiff's qualifications." Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (1998)(quoting McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973)).

### a. The Plaintiff cannot establish that MDC discriminatorily failed to promote her because of discriminatory animus

The Plaintiff fails to establish the fourth element of a "failure to hire" claim. There is no evidence proffered by the Plaintiff to causally connect the failure to promote the Plaintiff and a discriminatory intent. The Plaintiff was interviewed for the positions. She was simply not selected because MDC did not believe that she was the most qualified candidate. The Plaintiff cannot rely upon speculation to establish a causal connection. As such, the Plaintiff has failed to establish a prima facie case of discriminatory failure to promote.

### b. MDC has proved a legitimate, non-discriminatory reason for not promoting the Plaintiff

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), if the plaintiff establishes a prima facie case under Title VII, the burden then shifts to the employer to demonstrate it had a legitimate, non-discriminatory reason for its action. Should the Court determine that the Plaintiff established a prima facie case under Title VII related to her failure to promote claim, MDC has proffered legitimate, non-discriminatory reasons for not promoting the Plaintiff. Without exception, the employees hired for each and every position for which the Plaintiff were more qualified that she was. The Plaintiff herself admitted that all the individuals that were hired for the positions that she applied for were qualified.

The Plaintiff cannot refute MDC's reasons for not promoting her as pretextual. Two of the six individuals hired were female. Each of the hired individuals were at least "as qualified" as the Plaintiff. Her supervisors at times during her employment with MDC have been members of minority groups.

8

Accordingly, MDC is entitled to judgment as a matter of law on the Plaintiff's claim that MDC failed to promote her in violation of Title VII.

### 5. THE PLAINTIFF HAS FAILED TO PROVE HER FAILURE TO PROMOTE CLAIM ON THE BASIS OF HER RACE, GENDER AND NATIONAL ORIGIN IN VIOLATION OF SECTION 1983

The standards set forth above under Title VII apply to a "failure to promote" claim under Section 1983. For the reasons set forth above, the Plaintiff has failed to prove her failure to promote claim.

In addition, to hold the employer liable under 1983, the plaintiff must establish that the failure to promote claim arose from an official policy or custom. Jeffrs v. Barnes, 208 F.3d at 57-58. There is no evidence of a custom or policy related to discriminating against the Plaintiff in terms of failing to promote her. As discussed above, the Plaintiff did not demonstrate any discriminatory intent in any action taken by MDC.

Accordingly, MDC is entitled to judgment as a matter of law on the Plaintiff's claim that MDC failed to promote her in violation of Section 1983.

### 6. THE PLAINTIFF HAS FAILED TO PROVE HER FAILURE TO PROMOTE CLAIM ON THE BASIS OF HER RACE IN VIOLATION OF 1981

MDC incorporates its argument that the Plaintiff failed to prove a "failure to promote" claim under Section 1983 to support its argument that MDC is entitled to judgment as a matter of law under Section 1981. In addition, under a 1981 claim, the Plaintiff was required to show that her race was the basis for MDC's failure to promote her. The record is completely devoid of any factual basis to support a racial discrimination charge.

MDC is entitled to judgment as a matter of law on the Plaintiff's claim that MDC failed to promote her in violation of Section 1981.

### 7. THE PLAINTIFF HAS FAILED TO ESTABLISH THAT SHE WAS RETALIATED AGAINST IN VIOLATION OF TITLE VII

To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in an activity protected under Title VII; (2) the employer was aware of the plaintiff's activity; (3) the plaintiff suffered an adverse employment action; and (4) there existed a causal link between the plaintiff's activity and the adverse action. Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir.2003).

#### a. The Plaintiff failed to show a causal link between her complaint and any adverse action

To prove the first element of a retaliation claim, the plaintiff must show that she engaged in a protected activity. That is, the plaintiff must demonstrate that she complained about harassment or discrimination, and not just that she did not receive promotion or the job of her choice. The Plaintiff testified that she brought a complaint to the Connecticut Commission on Human Rights and Opportunities on August 9, 2001. The Plaintiff thereby satisfied the first element. The second element is also not at issue.

As to the third element, the only adverse employment actions suffered by the Plaintiff after this time period were MDC's failure to hire her to the positions of Manager Operations, Manager of Environmental Health & Safety and Assistant Manager of Operations[1]. The fourth element, the causal connection between the protected activity and the failure to promote is also a critical one. There is no evidence of retaliatory

---

[1] The Manager of Operations position was posted in April, 2002 and Mr. Donovan was selected on June 3, 2002. *See* Defendant's Exhibit 522 & 528. The position of Assistant Manager of Operations and Manager of Environmental Health & Safety were both posted on June 17, 2002. *See* Defendant's Exhibit 529 & 541. Mr. Wall was selected on or about September 18, 2002 and Ms. Nyren was selected on or about September 19 or 20, 2002. *See* Defendants Exhibits 532 & 544.

animus. The Plaintiff has not set forth any direct evidence that MDC failed to promote her in reaction to her agency complaint.

Yet, "[c]ourts have noted that temporal proximity can give rise to a reasonable inference of a causal connection between the protected activity and the adverse employment action." Newtown v. Shell Oil Company, 52 F.Supp.2d 374 (D.Conn. 1999). The temporal proximity in this matter, however, does not support the inference of a causal connection. "The cases that view temporal proximity between an employer's knowledge of protected activity and an adverse employment action as a means of establishing causality hold that the temporal proximity must be very close." Nonnenmann, 2004 U.S. Dist. LEXIS 8966, 02 Civ. 10131 (S.D.N.Y May 20, 2004)(The respective spans of four months and one year between protected speech and the adverse employment actions are not the "very close" proximity sufficient to raise an inference of causality)(Emphasis supplied); *see also* Hollander v. American Cyanamid Co., 895 F. 2d 80, 85-86 (2d Cir. 1990)(Three and one-half month lapse between plaintiff's agency complaints and alleged retaliatory act insufficient to show causal nexus.); Punsal v. Mount Sinai Servs. of the Mt. Sinai Sch. of Med. of N.Y. Univ., 2004 U.S. Dist. LEXIS 5739, 01 Civ. 5410 (S.D.N.Y. Apr. 6, 2004)(Ten months passed between the time when plaintiff filed the SDHR/EEOC complaint and plaintiff's termination, and thus case was not one in which temporal proximity demonstrates a causal nexus between the charge of discrimination and a plaintiff's subsequent termination.); Diaz v. Weill Med. Ctr. of Cornell Univ., 2004 U.S.Dist. LEXIS 2054, 02 Civ. 7380 (S.D.N.Y. Feb. 13, 2004)(Peck, M.J.)(five month gap not sufficiently close to show causation); Knight v. City of New York, 303 F. Supp. 2d 485, 497 (S.D.N.Y. 2004)("The temporal sequence [of about

fifteen months] fails as a matter of law to establish that [plaintiff's] harassment complaint prompted the negative evaluations."); Admassu v. Fox/Lorber Assocs., Inc. 2003 U.S.Dist. LEXIS 17630 (S.D.N.Y. Oct. 6, 2003)(Allegedly retaliatory e-mails sent six months after plaintiff filed her EEOC complaint were "simply too far removed temporally from the filing of the EEOC complaint to raise an inference of retaliation."); Khan v. Abercrombie & Fitch, Inc., 2003 U.S. Dist. LEXIS 16329, 01 Civ. 6163 (S.D.N.Y. Sept. 17. 2003) ("The five-month gap between [plaintiff's] . . . addition to her . . . NYCCHR complaint and her termination, combined with the absence of other evidence, are too great to infer a causal connection."); Rinsler v. Sony Pictures Entm't, Inc., 2003 U.S. Dist. LEXIS 14754, 02 Civ. 4096 (S.D.N.Y. Aug. 25, 2003)("The almost six-month lag between [the protected activity] and the alleged retaliatory termination . . . is too temporally remote to support a retaliation claim.") (citing cases); Stuevecke v. New York Hosp. Med. Ctr. of Queens, 2003 U.S. Dist. LEXIS 14793, No. 01-CV-326 (E.D.N.Y. Aug. 26, 2003) (protected activity and termination "occurred more than five months apart - a period which is too distant to permit a jury to find a causal connection between the two events based on time proximity."); Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 285, 315-16 (S.D.N.Y. 2003)("The four-month interval between the Plaintiff's [protected activity] in April 1999 and his termination in July 1999 is insufficient evidence of a causal connection. . . . In fact, courts have repeatedly held that a four-month interval does not establish a causal connection for the purposes of a retaliation claim.").  These cases demonstrate that the interval from the August 2001 filing until the missed promotions in March 2002 and May 2002 is insufficient evidence to support the Plaintiff's retaliation claim.

12

### b. The Plaintiff failed to show that MDC's explanation for hiring others was pretextual

If the plaintiff establishes a prima facie case, the employer can offer a non-discriminatory explanation for the employment decision. If the employer meets its burden, the plaintiff then bears the ultimate burden of establishing that the employer's proffered reasons are a pretext for discrimination. Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir. 1998).

For the reasons set forth above in the discussion of the Plaintiff's failure to promote claim, the Defendant's explanation for its action in the promotional opportunities that the Plaintiff pursued is non-discriminatory.

Accordingly, MDC is entitled to judgment as a matter of law on the Plaintiff's claim that MDC retaliated against her in violation of Title VII.

### 8. THE PLAINTIFF HAS FAILED TO ESTABLISH THAT SHE WAS RETALIATED AGAINST IN VIOLATION OF SECTION 1983

The standard for retaliation in violation under Section 1983 adds an additional element to the standard set forth above under Title VII. In addition to the elements set forth above, the Plaintiff must also establish that the MDC's retaliation or adverse employment action taken was conducted pursuant to an official policy of the MDC.

There is no evidence of any official policy that would encourage retaliation against the Plaintiff. MDC is entitled to judgment as a matter of law on the Plaintiff's claim that MDC retaliated against her in violation of Section 1983.

### 9. THE PLAINTIFF HAS FAILED TO ESTABLISH THAT SHE WAS RETALIATED AGAINST IN VIOLATION OF SECTION 1981

The standard for retaliation in violation under Section 1981 is the same standard as set forth above under Title VII.  Section 1981, however, is directed only at racial discrimination.  Again, no evidence was presented that the Plaintiff was retaliated against because of her race.  Accordingly, MDC is entitled to judgment as a matter of law on the Plaintiff's claim that MDC retaliated against her in violation of Section 1981.

### III.  CONCLUSION

For the foregoing reasons, the Metropolitan District Commission respectfully requests that the Court grant its motion for judgment as a matter of law.

>
> THE DEFENDANT,
> THE METROPOLITAN
> DISTRICT COMMISSION
>
>
> BY_____
> David A. Ryan, Jr. (ct. 05064)
> Holly Quackenbush Darin (ct. 10183)
> Ryan & Ryan, LLC
> 900 Chapel Street
> Suite 621
> New Haven, CT  06510
> -Its Attorneys-

## **CERTIFICATION**

The undersigned hereby certified that the foregoing was hand delivered this 2nd day of June 2005 to all counsel and pro se parties of record as listed below:

Francis A. Miniter
Miniter and Associates
100 Wells Street, Suite 1D
Hartford, CT  06103

_____
Holly Quackenbush Darin