UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| DAISY CHAVEZ | : | |
| | : | No. 3:02CV458(MRK) |
| VS. | : | |
| | : | |
| METROPOLITAN DISTRICT COMMISSION | : | June 1, 2005 |
| | : | |

PLAINTIFF'S MEMORANDUM
RE DEFENDANT'S MOTION TO DISMISS AT TRIAL

**I.  Hostile Work Environment - Title VII**

Plaintiff has produced evidence on all of the elements of this claim.

A.   Ms. Chavez was subjected to a hostile work environment.

There is ample evidence from Ms. Chavez, Mr. Thomas, Ms. Wright and Mr. Gozzo that Ms. Chavez was removed from a position that (a) had a budget; (b) had 19 employees reporting to her; and (c) had a job description, and placed in a "temporary special assignment" position that had none of these.  In addition, she was obliged as a Grade 14 manager to mop and vacuum her floor, scrounge for junk quality furniture and left in an open, noisy workspace without a cubicle or office, conditions that no one around her, even lower ranking personnel, had to endure.  Further, she was openly and viciously berated by Mr. Anthony Milano, the Director of the Metropolitan District.  Finally, when her supervisor, Mr. Thomas, tried to give her office space, she was physically removed from it in two hours time at the insistence of his boss, Mr. Geldof, the Director of Engineering, and there was evidence that this incident was discussed even with Mr. Milano.

Certainly, Ms. Roughan, the Director of Human Resourcesl, was involved in the incident and in the end Mr. Thomas had to yield to the wishes of his superiors.

      B.      There is a Specific Basis for attributing the conduct that created the hostile environment to her employer, the MDC.

The actions described above were taken at the highest managerial levels of the MDC and involved Mr. Milano, the District Director, Mr. Geldof, the Director of Engineering, and Ms. Roughan, the Human Resources Director.

      C.      Ms. Chaves' race, gender and/or national origin was a substantial or motivating factor in he MDC's conduct.

First, there is no legitimate reason for this conduct. In all cases, when questioned, the highest level personnel were unable to describe the duties of the "Temporary Special Assignment" or why she should be removed from the office. Mr. Milano berated her in the presence of Mr. Thomas but expressed no particular reason for the verbal assault on her. Second, the evidence shows that the white males who occupy the key positions at the MDC have a long history of bias against women and minorities. In particular, in 1998 and 1999, there was only one woman out of more than 20 managers, and she was in Human Resources, and when she left that position, she was succeeded by a woman who herself was succeeded by a woman. It was a designated position for a token woman. In the year 2000, one woman was added to the managerial ranks, and by the start of 2003, there were three women out of 24 managers - and none of them in Operations. In the summer of 1998, Mr. Milano spoke to Ms Chavez about a managerial position in Operations, that received hostile comments from Operations personnel - Mr. Amaio's testimony that Mr. Pierce, a Superintendent said "Are you ready to work for a woman?" The comment is clearly hostile to women in power.

This attitude continued as Mr. Demirgian testified that later on Mr. Hanson stated that "If Daisy Chavez got the job, he would leave the next day and a number of men would go with him." Mr. Milano backed off on his promise and for no good reason placed her in a limbo position on September 23, 1998, from which she did not begin to emerge until the spring of 2001, but even then she was denied the supervisory tasks that went with the Special Services Administrator position to which she was then assigned.

All of the three women given managerial positions were white women. There were no minorities - Hispanic or Black - among them. Indeed, the managerial ranks were and are even more sparsely occupied by minorities. Mr. Alvarado stated that he was the only Spanish-descended manager that he knew of up to his retirement in 1999. He was replaced by Mr. Thomas, a black person, with minority succeeding minority, much as woman succeeds woman there in Human Resources. Mr. Thomas stated that since 1999 there have been no Hispanic managers at all among the 22 to 24 managers from time to time and that there was only one other black manager, who is gone now. Hostility to Hispanic personnel was evidenced at the highest levels when a Commissioner, Trudi Mero, made a gratuitous remark about Cuban-Americans that surprised and upset Mr. LaRosa. This remark was made somewhere between 1995 and 1997 and evidences a deep set hostility to Hispanics, and to foreign born personnel, at the MDC.

Ms. Chavez had two strikes against her. She was both a woman and a minority, and a foreign born minority at that. There are absolutely no minority women managers at the MDC, nor from the evidence does it appear there ever were. This despite the obvious fact that the Hartford area is inhabited by a substantial number of Hispanic and Black people who provide an excellent source of minority employees.

Then there was the pervasive in indifference to affirmative action as evidenced by the dropping of an Affirmative Action Plan from 1997 to 2002.

D.  The MDC's Actions proximately caused injuries to Mrs. Chavez

There was much testimony about the emotional distress that this caused her directly (when Mr. Milano verbally abused her) and indirectly, with the interminable humiliation and embarrassment of her physical work circumstances and dead-ending of her job future. Ms. Wright testified to a change in her demeanour and personality, and Ms. Chavez testified to becoming quite physically ill from the stress.

II.  **Hostile Work Environment - § 1983 - "Official Policy"**

The evidence of the almost complete lack of women and minorities in managerial positions (EE-15 and above) 40 years after the 1964 Civil Rights Act passed indicates an intention of preserving the good old boy system. The MDC did nothing to change until the Harper verdict hit them in the face, and even then change was reluctant and resisted. The actions described occurred at the highest levels of management, indicating that this attitude was accepted by the top personnel. There is evidence that when Mr. Milano briefly considered Ms. Chavez for the position of Assistant Manager of Operation, there was a gender backlash and he acceded to it. He immediately dead-ended her to solve this problem. The highest levels of management kept her in miserable working conditions, and this included Mr. Milano, Mr. Geldof and Ms. Roughan.

The failure to maintain an Affirmative Action Plan for five years could only occur at the highest levels of management of the MDC. That failure is evidence that is just did not matter to the District Director, his advisors or the Commissioners themselves.

**III.    Retaliation under Title VII**

    A.    The Protected Activity

In August 2001, Ms. Chavez filed her first CHRO complaint that forms the basis of the first action consolidated for trial here.

    B.    The Adverse Employment Action

The adverse employment action had already occurred as described above in the section on Hostile Work Environment. But it did continue. To this day, she has the substandard furniture marking her as "inferior". To this day, she is not allowed to perform the managerial and supervisory functions of the position that she occupies. The MDC continued an overt oppression of her unabated.

    C.    The Protected Activity was a substantial and/or motivating factor in the adverse employment action.

It is submitted that given the unresolved nature of her claims, the MDC has chosen to continue the already taken adverse employment actions as a punitive lesson to her and to others. The fact that despite all the evidence of something as simple as the substandard furniture, the MDC has not even shown good faith enough to correct that condition prior to trial. This failure is evidence of an intense retaliatory intention. There is no need for something as simple and obvious as that to go unaltered.

    D.    The adverse action was the proximate cause of injury to Ms. Chavez

See the equivalent discussion under the topic "Hostile Work Environment".

**IV.    Retaliation Under Section 1983**

The only additional issue is that of "Official Policy". See the equivalent discussion of this issue above in the Hostile Work Enivronment - 1983 section.

## V.     Failure to Promote - Title VII

A1.    Ms. Chavez' gender was a substantial motivating factor in the MDC's decision not to promote her to any of the six positions

As noted above, in the time frame under consideration, there were very, very few women managers at the MDC. In 1999, less than 5%; in 2000, less than 10%, in 2003, 39 years after the EEOC law came into effect, less than 15%. Yet women account for slightly more than half the populations of Connecticut. There was evidence (from Mr. Amaio and Mr. Demirgian) that persons in substantial managerial positions were openly opposed to a woman taking a management position in operations. There were also blatant attempts to keep her out of the running for various positions. E.g., Exhibit 30H, taking points away from her managerial performance as Customer Service Administrator; Exhibit 29E, informing her that she did not meet the minimum qualifications for the position of Manager of Environment, Health and Safety, thus delaying her application until after the interviewees were selected. There was evidence that a male applicant for one position who did not even have a Bachelor's degree was selected instead of Ms. Chavez who was educationally more qualified and experientially at least as qualified. There was evidence that her 1999 application was first declined as unqualified, then after the qualifying evidence was presented, it was simply ignored and forgotten. She was not even given the courtesy of a response, even though her qualifications on the engineering side were not questioned again until 2002, when it was again convenient to delay her application. Finally, there was the official position to ignore affirmative action by failing to maintain an Affirmative Action Plan throughout the whole period in question.

      A2.    Her race and national origin were also motivating factors.

As noted above, all of the three women given managerial positions were white women. There were no minorities - Hispanic or Black - among them. Indeed, the managerial ranks were and are even more sparsely occupied by minorities. Mr. Alvarado stated that he was the only Spanish-descended manager that he knew of up to his retirement in 1999. He was replaced by Mr. Thomas, a black person, with minority succeeding minority, much as woman succeeds woman there in Human Resources. Mr. Thomas stated that since 1999 there have been no Hispanic managers at all among the 22 to 24 managers from time to time and that there was only one other black manager, who is gone now. Hostility to Hispanic personnel was evidenced at the highest levels when a Commissioner, Trudi Mero, made a gratuitous remark about Cuban-Americans that surprised and upset Mr. LaRosa who testified about it. This remark was made somewhere between 1995 and 1997 and evidences a deep set hostility to Hispanics, and to foreign born personnel, at the MDC. And again, concern about minority rights was so minimal at the MDC that during the relevant period of time, there was no Affirmative Action Plan at all.

      B.    The failure to promote caused injury to Ms. Chavez

Ms. Chavez testified to the differential in pay scale and the economic losses she has suffered as a result of the failure to promote. She has also testified to the harm to her career caused by the dead-ending of her position. In addition, she has testified to the on-going frustration in trying to gain recognition of her ability and promotion to the levels to which she can work. As Mr. Gozzo said, she is "a very smart woman".

**VI.**    **Failure to Promote - § 1983**

The official action requirement has been discussed above. All of the decisions regarding promotion involved, first and universally, the Department of Human Resources, and we have evidence of hostility or indifference on the part of Ms. Roughan, the former director of Human Resources, who was there for three of the promotion situations. Second, all other personnel involved in these decisions were high level managers of the MDC. From the ongoing - 40 year - failure to comply with

Equal Employment Opportunity requirements and guidelines, it is apparent that the highest levels of management, including the Commissioners themselves, had to acquiesce in the policy of not hiring or promoting women and minorities into managerial positions. Remember, there has never been a woman manager in Operations. Remember, too, there has never been a minority woman manager in the MDC.

## VII.    § 1981 Claims

The marshalling of evidence under the previous sections will suffice for these claims as well.

## VIII.    CONCLUSION

For the reasons set forth herein, the statute of limitations applying to Plaintiff's 1981 claims in the case should be held to be four years.


                PLAINTIFF
                DAISY CHAVEZ

By_____
        Francis A. Miniter
        Miniter and Associates
        100 Wells Street, Suite 1D
        Hartford, CT 06103
        phone 860-560-2590
        fax    860-560-3238

      email: miniter@attglobal.net
      Fed. ID No. CT09566


## CERTIFICATION OF SERVICE

The undersigned does hereby certify that a true copy of the foregoing together with all attachments thereto was delivered to the following counsel of record by hand delivery, on June 2, 2005:

Holly Quackenbush Darin, Esq.
David Ryan, Esq.
Ryan & Ryan
900 Chapel Street, Suite 621
New Haven, CT  06510

      _____
      Francis A. Miniter