UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAISY CHAVEZ, | : | CIVIL ACTION |
| | | 3:02CV458 (MRK) |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| METROPOLITAN DISTRICT | : | |
| COMMISSION, | : | |
| Defendant | : | JUNE 17, 2005 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION/APPLICATION FOR
ATTORNEY FEES**

I. **PROCEDURAL AND FACTUAL INTRODUCTION**

The Defendant, Metropolitan District Commission ("MDC"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(k) and 42 U.S.C. § 1984 respectfully moves as the prevailing party in the above matter for an award of reasonable attorneys fees in the amount of $279,167.50 or in such reasonable amount as the Court deems appropriate on the basis that the Plaintiff Chavez's claims in this lawsuit were clearly unreasonable, frivolous, meritless and/or without proper foundation.

As the Court is aware, the Plaintiff Chavez brought two separate actions against the Defendant MDC which were consolidated for trial. The Plaintiff claimed that the Defendant MDC discriminated and/or retaliated against her on the basis of her gender, race, ethnicity and/or national origin by subjecting her to a hostile work environment, and in failing to promote her to six different managerial positions for which she applied, i.e. Manager of Water Supply, Manager of the Treasury, Manager of Utility Services, Manager of Operations, Assistant Manager of Operations, and Manager of Environment, Health, and Safety.

1

After the Plaintiff Chavez rested her initial case, the Defendant MDC moved for a directed verdict contending that the Plaintiff Chavez had produced no evidence of any causal connection between any alleged retaliatory conduct by the Defendant MDC and protected activity by the Plaintiff Chavez.[1]  Thereafter, the Plaintiff Chavez withdrew her retaliation claim.  On June 6, 2005, the jury rendered a verdict in favor of the Defendant MDC on all of the Plaintiff's remaining claims.

## II.  LEGAL ARGUMENT

### A.  The Defendant is entitled to attorneys' fees on the basis that it is the prevailing party and the Plaintiff's claims were unreasonable and without reasonable foundation.

The Plaintiff's claims of hostile work environment, failure to promote, and retaliation were brought under 42 U.S.C. 1983, 42 U.S.C. 1981, and Title VII of the Civil Rights Act of 1964.  Section 706(k) of Title VII provides:  "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party…a reasonable attorney's fee as part of the costs…."

The United States Supreme Court in <u>Christianburg Garment Co v. Equal Employment Opportunity Commission</u>, 434 U.S. 412, 421-422, 98 S.Ct. 694, 54 L. Ed. 2d 648 (1978), held that a "district could in its discretion award attorney fees to a prevailing defendant in a Title VII case upon finding that the plaintiff's actions were frivolous, unreasonable, or without reasonable foundation, even though not brought in subjective bad faith or that the plaintiff continued to litigate after it clearly became so".

The <u>Christiansburg</u> standard applies equally to cases brought under 42 U.S.C. 1983.  See <u>Hughes v. Rowe</u>, 449 U.S. 5, 14, 66 L. Ed. 2d 163, 101 S.Ct. 173 (1980).

---

[1] In fact, at the time of making its Rule 50 Motion, the Plaintiff Chavez had produced no evidence that any of the decision-makers at the Defendant MDC even knew that she had filed a claim of discrimination with the Connecticut Commission on Human Rights and Opportunities.

2

The Plaintiff Chavez's claims, if not "frivolous", were clearly unreasonable and/or without a reasonable foundation. Specifically, although the Plaintiff claims that she was subjected to a hostile work environment, denied promotions, and retaliated against because of her gender, race, national origin, and/or ethnicity, she provided no evidence that the Defendant MDC's actions with respect to her employment were in any way connected to her gender, race, national origin, and/or ethnicity other than her own self-serving testimony which was not only inconsistent, but in fact harmful to her claims.

First, the Plaintiff Chavez provided no evidence that the environment that she claims was "hostile" (i.e. her transfer to a temporary position in Engineering and Planning in 1998, her assignment to demeaning tasks, lack of furniture and a computer, and the lack of an adequate work space) resulted from a discriminatory animus by MDC. Indeed, such a claim was and continues to be implausible for a variety of reasons. The record evidence established that the person responsible for her temporary assignment to Engineering and Planning was Anthony Milano. However, any claim that his actions were the result of a discriminatory animus is undercut by her own admission that Mr. Milano sat down with her on a number of occasions prior to the transfer to discuss potential promotional opportunities and, according to the Plaintiff, promised her a position as Assistant Manager of Operations. Such are not the acts of a discriminator and, obviously, Mr. Milano did not change into a discriminator overnight.

Further, two of the individuals responsible for overseeing the Plaintiff's work while she was in the Engineering & Planning Department and providing her with the assignments she claims were discriminatory were Luis Alvarado, a Hispanic male, and Lebert Thomas, an African-American male. Such evidence completely undercuts any

3

claim by the Plaintiff Chavez that any hostile work environment to which she was allegedly subjected was the result of her gender, race, national origin or ethnicity.

Finally, the only evidence of causal connection were four stray remarks, most of which occurred outside the time period of this lawsuit. The first comment was made sometime in the period 1995 to 1997 by Gertrude Mero, an African American female and one of the MDC's Commissioners at the time. Ms. Mero allegedly said, "Cuban Americans are not minorities." However, this stray remark on its face is not discriminatory and *assuming arguendo* that this remark could be construed as an anti-Hispanic remark, the Plaintiff Chavez produced no evidence that: (1) Gertrude Mero was a commissioner during the relevant time period; (2) that she was involved in the transfer of the Plaintiff Chavez to Engineering & Planning; or (3) that she was involved in the decisions not to promote the Plaintiff Chavez to any of the six different positions at issue.

The second comment was made in 1998 by Steve Pierce, a Superintendent in the Operations Department to Mr. Amaio in which Mr. Pierce allegedly asked Mr. Amaio, "Are you ready to work for a woman?" Even assuming this remark is evidence of anything, much less discriminatory animus, the Plaintiff Chavez provided no evidence that Mr. Pierce was involved in the decision respecting the Plaintiff's transfer to the Engineer & Planning Department in 1998 or the decisions as to what assignments to provide to her. Further, the Plaintiff provided no evidence to show that Mr. Sparks or Mr. Donovan, who were the decisionmakers that selected the individuals hired for the Manager of Operations and Assistant Manager of Operations positions, were aware that such remarks had been made. In fact, both men testified that they were not aware that such comments had been made.

4

The third comment was made by Mark Hanson with respect to the Manager of Utility Services position opening in 2001. Mr. Hansen apparently said that, if Daisy Chavez got the position, he would quit and others would go with him.

Fourth, Mr. Hansen also apparently said that he would never work for a woman. However, with respect to both the third and fourth comments, Mr. Hansen was merely an applicant for this position and was not the decisionmaker for this position. Further, Mr. Dellaripa testified that he was not aware when Mr. Hanson was selected for this position that Mr. Hanson allegedly said he did not want to work for a woman.

Not only are the above stray comments insufficient to establish discriminatory animus, but the Plaintiff Chavez was well aware prior to trial and commencing this action, that, with respect to the failure to promote claim, <u>two</u> of the positions at issue in this trial were given to women which fact belies any claim of discriminatory animus based upon the Plaintiff's gender. Further, it is undisputed that there were six different decisionmakers for the positions sought by the Plaintiff. The Plaintiff admits that she had no evidence to show that any of these people discriminated against her except for stating that they participated in the selection process.

Finally, with respect to the Plaintiff's failure to promote claim, the Plaintiff Chavez had the exhibits in her possession prior to trial showing the qualifications of the individuals selected for each of the six positions. The Plaintiff admitted during cross examination that those exhibits showed that the people chosen for the six different positions were qualified and in fact, for some positions, the successful candidates were <u>equally qualified</u>.

5

Lastly, the Plaintiff's claim that somehow the number of minority managers shows discrimination on the part of MDC is unreasonable given that there was no evidence to show that any minorities other than herself <u>applied</u> for managerial positions. Thus, without more, it was unreasonable for the Plaintiff Chavez to rely upon numbers of minority managers to show discriminatory animus by the Defendant MDC.

It is clear, therefore, that an award to the Defendant MDC of a reasonable attorneys' fee is warranted because the Plaintiff Chavez's claims were unreasonable, meritless and frivolous. The Plaintiff had no factual or legal basis to support her claims of discriminatory conduct by the Defendant MDC and knew this fact prior to commencing trial.[2]

The fact that an award of attorneys' fees is warranted is supported by other cases in the Second Circuit, in which attorneys' fees have been awarded to prevailing defendants under similar facts and circumstances. For example, in <u>Steinberg, et al v. St. Regis/Sheraton Hotel</u>, 583 F. Supp. 421 (1984), the Court granted the employers' motion for an award of attorneys' fees under facts and circumstances strikingly similar to those in the instant case. In <u>Steinberg</u>, the plaintiff Steinberg claimed he was discharged based upon his religion (Jewish) in violation of Title VII and the plaintiff D'Arpe claimed he was discharged based on his national origin (Italian), also in violation of Title VII. Additionally, both plaintiffs claimed that they were discharge based upon their age in violation of the ADEA. The jury returned a verdict in favor of the defendant on the

---

[2] The fact that the Plaintiff was well aware that she had no evidence of discrimination prior to trial is also reflected in an affidavit which was submitted to this Court in support of her objection to the Defendant MDC's Motion in Limine seeking to limit the Plaintiff Chavez's evidence of retaliation. In her affidavit, the Plaintiff states that she knows that the Defendant discriminated against her and did so on the basis of her gender, race, ethnicity and national origin, but she did not know why and she will never know "when it comes to bigots why they do what they do." <u>See</u> Affidavit of Daisy Chavez dated March 21, 2005 at ¶¶ 6 & 9.

6

ADEA claim and the Title VII claim was later withdrawn while the jury was deliberating on the ADEA claim.

The employer filed an application for attorney's fees. The court noted at the outset that "this was clearly one of most frivolous employment discrimination actions ever brought." The court held that the employer was a "prevailing party" for purposes of Title VII and that the plaintiffs' claims therein were unreasonable and meritless. Id. at 425. The court found that there was virtually nothing to support the plaintiffs' claims other than their own self-serving testimony and further found that numerous facts undercut their claims. Specifically, the Hotel's senior official was of the same religious persuasion (Jewish) as the plaintiff Steinberg. Also, the plaintiff D'Arpe's immediate supervisor who agreed with the decision to terminate D'Arpe was of the same national origin as D'Arpe (Italian) as was the person chosen to replace D'Arpe. Finally, both plaintiffs were replaced with individuals either the same age or older than the plaintiff's. In sum, the court held that the defendant's demand for fees must be taken seriously because, "[t]he very purpose of permitting the awarding of attorney's fees to prevailing defendants in certain circumstances is to protect them from being forced to litigate claims that have no legal of factual basis." Id. at 424.

Like Steinberg, in the instant case as set forth in detail above, there was virtually no evidence prior to trial or produced at trial to support the Plaintiff's claims and, in fact, numerous facts undercut her claims. There was no evidence of discriminatory animus other than a few stray remarks which were unconnected to any other evidence. Further, as in Steinberg, two of the positions at issue in this lawsuit were given to persons in the same protected category as the Plaintiff. The Plaintiff Chavez admitted that the persons

7

selected for the various positions were qualified, and, in some cases, were as qualified as she was.

In <u>Brisbane v. The Port Authority of New York and New Jersey</u>, 550 F. Supp. 222 (S.D.N.Y. 1982), which is another case similar to the instant case, the plaintiff, an African American woman, alleged that the defendant discriminated against her in violation of Title VII by not giving her a salary increase and passing her over for various promotions she sought.  After a six-day bench trial, the court dismissed the complaint on the basis that the plaintiff had utterly failed to prove discrimination and on the basis that the action was frivolous and was initiated only to harass and punish the defendant.  The court held that the plaintiff's claims were frivolous, unreasonable, and vexatious and awarded attorneys' fees to the defendant on that basis.

Specifically, in <u>Brisbane</u> the plaintiff sought numerous promotions.  Although she had failed to secure any of the positions for which she applied, she was interviewed in connection with many of the applications and was given fair and adequate consideration. Further, in almost every instance in which the plaintiff was denied a promotion, the successful applicant clearly was more qualified that the plaintiff.  Further, many of the promoted candidates were either female, members of racial minorities, or both.  The plaintiff in <u>Brisbane</u> also had a poor work history and, based upon this history, the fact that she clearly was lesser qualified than the candidates selected, and the fact that the plaintiff admitted on the witness stand that she had absolutely no objective evidence that the defendants had wrongfully discriminated against her in any way, the court held that from the inception of her case, the plaintiff knew or should have known that her case lacked any merit whatsoever and concluded that the action was motivated by an angry

8

desire to punish defendants for her own professional failures that were of her own making.  Id. at 223-224.

Thus, the court held that the defendant was entitled to a reasonable attorneys' fee as part of the costs of defending the unreasonable action and stated: "To permit a plaintiff to prosecute such an action without fear of liability for the substantial cost to a wrongly-accused defendant of defending the action would make a one-sided mockery of the enforcement mechanism that Congress has enacted." Id. at 224.

Here, as in Brisbane, the Plaintiff Chavez was interviewed and given fair consideration for many of the positions for which she applied.  The successful candidates were clearly more qualified than she and she admits that they were qualified.  In addition, two of the positions which she sought were given to women.  The Plaintiff Chavez was cross-examined at length as to statements she had made in an earlier affidavit she submitted to the Court in which she essentially called the Defendants bigots.  The Plaintiff admitted that she had no objective evidence of discrimination as to the six decisionmakers or evidence that they were "bigots" other than that they took part in the selection process for the candidates.

In conclusion, it is clear, just as in Steinberg and Brisbane, that the Plaintiff's claims herein were unreasonable and meritless and that she should have known this at the inception of her case.  Yet, the Plaintiff chose to continue to pursue her claims, even her claim relating to the promotion for which females were hired.  In addition, she did not withdraw her retaliation claim until just prior to jury deliberations. Thus, it is clear that the Plaintiff Chavez's claims were unreasonable, frivolous and/or meritless and the

9

Defendant MDC as the prevailing party is therefore entitled to an award of reasonable attorneys' fees.

      B.      **The Defendant's Claim For Attorney Fees**.

Assuming that the Court determines that the Plaintiff Chavez's claims are unreasonable, frivolous and meritless, the issue becomes what amount of fees are appropriate under the particular circumstances of this case. The amount awarded must fulfill the deterrent purpose of the statute. See Faraci v. Hickey-Freeman Co., 607 F. 2d 1025, 1029 (2d Cir. 1979).

Defendant MDC seeks an award of 279,167.50 in attorneys' fees representing time spent on this file from May 2004 through June 6, 2005. The Defendant MDC has attached hereto its bills for this time period as well as the affidavits of all the individuals at Ryan & Ryan, LLC who worked on this file and whose time is reflected on those bills.

In order to calculate a reasonable amount to award by way of attorney's fees, the Court must compute the "lodestar amount" by multiplying the number of hours reasonably expended on a case by each attorney by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 437, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); Mr. & Mrs. B. On Behalf of W.B. v. The Weston Board of Education, 34 F. Supp. 777, 781 (D. Conn. 1999); Petronella v. Acas, et al, 2004 U.S. Dist. LEXIS 14371, * 2-3 (D. Conn. 2004). This amount is "derived by multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate charged for similar work by attorneys of like skill in the area." Petronella, at *3. "The fee applicant bears the burden of establishing the entitlement to an award and documenting the appropriate hours expended and hourly rates." Id.

In the instant case, the Defendant MDC seeks an award of attorneys' fees in the amount of $279,167.50 broken down as follows:

| | |
|---|---|
| Attorney David Ryan: | 404.00 hours X $250.00/hr. = $101,000.00 |
| Attorney William Ryan: | 3.25 hours X $250.00/hr. = $812.50 |
| Attorney Holly Quackenbush Darin | 694.50 hours X $210.00/hr. = $145,845.00 |
| Attorney Michael Brandt: | 67.75 hours X $190.00/hr. = $12,872.50 |
| Heather Bannister, law student: | 82.50 hours X $135.00/hr. = $11,137.50 |
| Jennifer Vincent, paralegal: | 75.00 hours X $100.00/hr. = $7,500.00 |

See Affidavit of David A. Ryan, Jr. at ¶¶ 8 & 9.

In support of its request, the Defendant MDC submits its billing records, and affidavits of each of the above individuals as well as the Affidavit of Attorney Christopher Brigham.

### a. **Reasonable rates**

For the specific hourly rates, the prevailing party is "entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." See Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers, 34 F. 3d 1148, 1159 (2d Cir. 1994); Polk v. New York State Department of Correctional Services, 722 F. 2d 23, 25 (2d Cir. 1983). The community to which the district court should look is the judicial district in which the court sits. Cruz, 34 F. 3d at 1159.

In the instant matter, the Affidavit of Attorney David A. Ryan, Jr. reflects that the fees charged by individuals of his firm were as follows:

| | |
|---|---|
| Attorney David Ryan, Jr. | $250.00 per hour |
| Attorney William Ryan | $250.00 per hour |
| Attorney Holly Quackenbush Darin | $210.00 per hour |
| Attorney Michael Brandt | $190.00 per hour |
| Heather Bannister (law student) | $135.00 per hour |
| Jennifer Vincent (paralegal) | $100.00 per hour |

See Affidavit of David A. Ryan, Jr. attached hereto at ¶ 9.

Attorney David Ryan, Jr. has practiced in the field of employment law since 1989. Attorney William Ryan has practiced in the field of employment law since 1992. Attorney Holly Quackenbush Darin has been practicing since 1991 and has practiced in the field of employment law since 1997. Attorney Michael Brandt has also practiced for over ten years and has practiced in the field of employment law since 2001. Heather Bannister has been a paralegal since about March of 2000, has worked extensively in the field of employment law, and is currently a third year law student at Quinnipiac University School of Law. Finally, Jennifer Vincent has been a paralegal since June 2002 and has also worked primarily in the field of employment law. *See* Affidavits of David A. Ryan, Jr., William Ryan, Holly Quackenbush Darin, Michael Brandt, Heather Bannister, and Jennifer Vincent attached hereto.

The affidavit of David A. Ryan, Jr. attests to his belief that the above rates are based upon prevailing rates in the field of employment law in the United States District Court for the District of Connecticut. See Affidavit of David A. Ryan, Jr. at ¶ 10. In

addition, the affidavit of Attorney Christopher Brigham, who has practiced in the field of employment law since 1992, attached hereto, also attests to the fact that the rates charged are consistent with the rates charged in the District of Connecticut.

In addition to the above affidavits, the Court can also determine reasonable rates based upon its own knowledge of such rates and by reviewing cases awarding attorney fees in the District of Connecticut. Other decisions, most of which <u>date back several years</u>, reveal that the above rates are consistent with what has been considered reasonable rates for attorneys, paralegals, and law students in this community.[3] See <u>Petronella v. Acas</u>, 2004 U.S. Dist. LEXIS 14371 ($225.00 per hour is reasonable rate for partner and $155.00 is reasonable rate for second year associate); <u>G.R., et al. v. Regional School District # 15</u>, 1996 WL 762324 (D.Conn.) ($ 225.00 per hour is reasonable rate for attorney); <u>Skubel v. Sullivan</u>, Civ. No. 90-279, 1998 WL 136176, at *3 (D. Conn. Mar. 11, 1998) (in a disability case, applying hourly rates of $ 250.00 and $ 200.00 for lawyers who had twenty-three and thirteen years experience in disability law, respectively, and who both taught disability law at Yale Law School; $175.00 for a lawyer with seventeen years experience in disability and Medicaid law; $125.00 for an attorney with lesser experience; and $ 60 for law students); <u>Laudano v. City of New Haven</u>, 1998 Conn. Super. LEXIS 1387, Civ. No. 330523, 1998 WL 281824 (Conn. Super. May 14, 1998) (finding that in a civil rights case under 42 U.S.C. § 1983 it was reasonable to charge $250.00 per hour for two partners; $150.00 for associates and $50.00 for a paralegal); <u>Weyel v. Catania</u>, 1997 Conn. Super. LEXIS 2182 (Conn. Super. Aug. 14, 1997) (applying an hourly rate of $200.00 for the lead attorney in a civil rights case brought

---

[3] Although the rates are higher than in some of the cases, it must be reiterated that most of the cases listed are several years old.

under 42 U.S.C. § 1983.); Fago v. City of Hartford, Civ. Action No. 3:02CV1189(AHN) (March 18, 2004)($275.00 per hour is reasonable for civil rights attorney). Based upon the above, the Defendant MDC respectfully submits that above rates are reasonable.

  **b.  Reasonable Hours**

"In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." See Luciano v. Olsten Corp., 109 F. 3d 111, 116 (2d Cir. 1997). Counsel may recover fees only for entries of fees that "identify the general subject matter of their time expenditures." Hensley, 461 U.S. at 437.

The Defendant MDC has submitted a copy of its bills relating to this matter which specify by individual the amount of time spent and the specific subject matter of the time expenditures. In addition, the Defendant MDC has submitted the affidavits of all individuals who have worked on this matter indicating their training and level of experience. Attorney David Ryan, Jr.'s affidavit specifically identifies the individual associated with the initials contained on the attached billing records and attests to the fact that all the time contained in the records attached was actually billed to MDC on this matter. See Affidavit of David Ryan, Jr. at ¶ 12.

The Plaintiff Chavez's claims of discriminatory and retaliatory treatment in this matter dating back to 1999 involved six different promotions[4] and a claim of hostile work environment, which involved facts prior to 1999. In addition, she sought relief under 42 U.S. C. 1983, 42 U.S.C.1981, and Title VII. The Defendant MDC respectfully represents that the time spent and reflected on the attached billing records was necessary in order to

---

[4] It was not until the final pretrial was held that the Defendant MDC became aware for the first time exactly which positions were at issue in this trial.

14

successfully defend itself prior to trial (via two summary judgment motions and several motions in limine) and also during trial.

### III. CONCLUSION

For all the foregoing reasons, the Defendant MDC respectfully requests that the Court award it reasonable attorney fees in the amount of $279,167.50 or in the amount the Court in its discretion believes is reasonable based upon the facts and circumstances of this case.

                            THE DEFENDANT,
                            THE METROPOLITAN
                            DISTRICT COMMISSION

BY_____
    David A. Ryan, Jr. (ct. 05064)
    Holly Quackenbush Darin (ct. 10183)
    Ryan & Ryan, LLC
    900 Chapel Street
    Suite 621
    New Haven, CT  06510
    -Its Attorneys-

### CERTIFICATION

The undersigned hereby certified that the foregoing was sent by regular mail, postage pre-paid, this 17th day of June 2005 to all counsel and pro se parties of record as listed below:

Francis A. Miniter
Miniter and Associates
100 Wells Street, Suite 1D
Hartford, CT  06103

                            _____
                            David A. Ryan, Jr.